James A. Roe, Jr. J.
This action was tried by the court without a jury.
Plaintiff has been an industrial arts teacher in the New York City school system for approximately 17 years. Defendant is the mother of one of plaintiff’s former pupils. In this action for libel, plaintiff seeks damages for ‘ ‘ injury to his credit and reputation and his standing in the community ’ ’ and ‘ ‘ great mental pain and anguish ’ ’.
On February 14, 1964, defendant visited the principal of the school at his office to complain and investigate an incident which her son Charles told her took place in school on the day before. The principal called plaintiff to his office. In the presence of defendant and her son, plaintiff was informed by the principal that he had received an oral complaint from defendant and her son that on February 13,1964 plaintiff, while correcting the schoolworlc of Charles, grabbed him by the neck and pushed his head into the desk, causing his nose to bleed. Plaintiff denied that such an incident took place. The principal requested defendant to write a letter concerning the incident and submit *701 it to him. This letter, dated February 15, 1964, is the writing on which this libel action is predicated. It reads as follows:
February 15, 1964
TO WHOM IT MAY CONCERN:
On Thursday, February 13, 1964, my son, Charles Piazza, arrived from school hysterical and upset. His nose was bleeding profusely. Before I could even ask him what had happened, he begged me to come up to his school * * * as his shop teacher, Mr. Segall [plaintiff], had banged his head against the desk several times thus causing his nose to bleed.
* * *
He told me that he had received instructions during his 8th period from Mr. Segall on mechanical drawing. His assignment was to make something 2%" wide. When he had completed the assignment, Mr. Segall came to check it. Charles was off on his measurement slightly. Whereupon Mr. Segall started to pound his head against the desk saying, “I am very surprised at you, Charles.” Charles’ nose began to bleed but he remained seated and said nothing until it was time to be dismissed, which was approximately 15 minutes. He then came home, his nose still bleeding badly.
On Friday, February 14, 1964, I went to the school to speak to the principal, Dr. Charles Tanzer, and to investigate the matter further. Mr. Segall was called in. Immediately after hearing my son’s account of the incident, he asked my son, “Did you report the fact that you had a bloody nose to me?” My son replied that he had not. Dr. Tanzer thereupon asked Mr. Segall if he had pushed Charles’ head against the desk. Mr. Segall replied that he had not.
I have heard from children who have been pupils in Mr. Segall’s class in the past, that he has been abusive to his pupils on other occasions. However, this is heresay [sic] and I cannot attest to these allegations.
This letter was placed in plaintiff’s personal file at the school.
On the trial of this action, plaintiff testified that the accusation was false; that since the incident he had suffered mental anguish which resulted in many sleepless nights; that teachers were discussing the incident and saying that he was in trouble; that teachers withdrew and changed the subject of conversation when he approached them; and that he feared that the false statement would interfere with his promotional opportunities ' and pay increases.
Of important significance is the testimony of Keith Salinger, a student who sat next to Charles in the classroom on February 13, 1964. He testified that plaintiff made corrections on his work and then on Charles’ papers; that he did not see or hear plaintiff beat Charles; that he did not see Charles’ nose bleeding; that he and Charles returned to their homeroom together and he did not see Charles’ nose bleeding, and that he did not see Charles holding a handkerchief to his nose.
The defendant’s and Charles’ testimony conforms substantially to the details contained in the letter of February 15, 1964. Defendant testified, further, that prior to this incident she *702 never knew or heard anything concerning plaintiff. She testified also that the statement was written af the request" of the principal. ¡Charles also testified that his nose was continually bleeding and that most of the ‘time his hahderkerchíéf covered his nose. He did not speak-to-anyone in his class nor did he inform his homeroom teacher about the incident; .....
There was obviously a sharp conflict of testimony on practically all the material issues of fact. The court believes the testimony of the' disinterested witness, Keith Saliuger, rejects the contention of the defendant that the-accusation was true, and finds that it was false. The .court further finds that.the statement was libelous. ’ ..... ■ y
Since the statement is untrue and-libelous, the next1 question is whether it is “ privileged ”. “ ‘ “ A communication made bona fide upon any subject matter in which the party’ communicating has an interest, or in reference to which- he has a duty, is privileged if made to a person, having a corresponding i/nterest or duty, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect - obligation (Byam v. Collins, 111 N. Y. 143, 150). The rule of law that permits such publications grew out of the desirability in the public interest of ecouraging a.full and fair statement by persons having a legal or moral duty to communicate their knowledge and information about a person in whom they have an interest to another who also has an interest in such person, Such privilege is known as a qualified, privilege. It is qualified because it does not extend beyond such statements as the writéy makes in. the performance of such.duty and in good faith.believing them to be true’ (Bingham v. Gaynor, 203 N. Y. 27, 31). When defendant’s statements are presumptively privileged the rule is that, in order to render them actionable, it is ‘ incumbent. on the plaintiff to prove that [they were] false and that the defendant was actuated by express malice or actual ill-will.’ ” (Shapiro v. Health Ins. Plan of Greater N. Y., 7 N Y 2d 56, 60-61.)
Unquestionably, the defense of “ privilege ” is applicable here and the court so holds.. Therefore, in order to recover, plaintiff must prove by a fair preponderance of the credible evidence not only that the statement is false but that the defendant, in making it, was actuated by express malice or actual ill-will (Shapiro v. Health Ins. Plan of Greater N. Y., 7 N Y 2d 56, 61, supra.) This the plaintiff has failed to do.
Accordingly, judgment is granted to defendant dismissing the complaint.