[No. 40316. Department Two. November 7, 1968.]

JOHN J. KEOUGH *et al., Appellants,* v. HARRY F. KITTLEMAN *et al., Respondents.**

*MacDonald, Hoague & Bayless* and *Kenneth A. Mac-Donald,* for appellants.

*Karr, Tuttle, Campbell, Koch & Campbell, Coleman P. Hall, Mont Clair Spear, Beresford & Booth,* by *Robert O. Beresford,* and *Allen, DeGarmo & Leedy,* by *George Leedy,* for respondents.

HILL, J.—*Quaere:* Where depositors in a savings and loan association have given voting proxies to the board of

*Reported in 447 P.2d 77.

directors,[1] can a majority of the board determine how the proxies are to be exercised, or must the members of the board concur unanimously in the exercise of the proxies?

■ *Answer:* Absent clear evidence of an intention to the contrary, a majority of the board of directors can determine how the proxies running to the board may be voted.

*Reason:* Contrary action could result in one dissident director disfranchising those giving such proxies and make it possible, in many instances, for a small minority to control an election. (This would have been the result in the instant case.)

Conceding that there is a paucity of authority on this particular question, our conclusion is in harmony with the current legislative trend[2] and with such well considered cases as *Steinberg v. American Bantam Car Co.,* 76 F. Supp. 426 (W.D. Pa. 1948) (by implication); *Hauth v. Giant Portland Cement Co.,* 33 Del. Ch. 496, 96 A.2d 233 (1953); *Hexter v. Columbia Baking Co.,* 16 Del. Ch. 263, 145 Atl. 115 (1929).

*Circumstances of the instant case:* The Highline Savings and Loan Association was founded in 1949, pursuant to the savings and loan statutes of the state of Washington, as a membership organization, and in 1959 its Articles of Incorporation were amended to qualify it to issue guaranty stock pursuant to RCW 33.48.010 enacted in 1955. Approximately 40,000 shares of guaranty stock were issued. Each stockholder is entitled to one vote per share, and each depositor is entitled to one vote for each one hundred dollars of his savings account.

---

[1] Under RCW 33.20.010 a savings and loan association by its bylaws may provide that each savings member shall be entitled to one vote for each one hundred dollars of his savings account. It is a stipulated fact in this case that "There are approximately 40,000 shares of stock issued.. Each share of stock is entitled to one vote at shareholders' meetings. Each depositor is entitled to one vote for each $100 which he has in savings accounts."

[2] Conn. Gen. Stat. Ann. § 33-336(b) (1960); Minn. Stat. Ann. § 301.26(5) (1947); Ohio Rev. Stat. Ann. § 1701.48(D) (2) (1964); Okla. Stat. Ann. 18 § 1.60(b) (1953).

A depositor, when opening his account, signs a printed account card which, among other things, contains a proxy. Prior to December, 1962, all the proxies ran to David J. Williams, the then president of the association. At that time the signature cards were changed by resolution of the board of directors to read:

> The undersigned hereby constitutes the Board of Directors of Highline Savings and Loan Association his proxy with right of substitution to vote in his behalf at all meetings of the association unless the undersigned be personally present.

The members of the association, in December, 1962, were mailed the new signature cards with a letter advising them that Public Law No. 87-397 required that they furnish a tax identification number for which a space was provided on the new signature card. The letter also advised each such member that it was regarded as "more desirable to have the entire Board of Directors as proxy, in lieu of . . . just one individual." Appellants place considerable emphasis on the phrase "entire Board of Directors" in this letter.

At the 1968 election of directors, the former president and some others opposed the re-election of the respondents York and Kittleman; and the appellants, Keough and Shaw, were nominated for their positions. Five members of the 7-man board of directors voted to cast the proxies held by the board for York and Kittleman; Mr. Williams, also a director, voted against; and the director nominated for re-election abstained. Mr. Williams voted his own shares and those for which he still held proxies for Keough and Shaw. York and Kittleman received 262,533, and 262,636 votes respectively; Shaw and Keough received 34,355 and 34,252 respectively.

Shaw and Keough brought this action to establish their right to serve as directors, contending that none of the depositors' proxies held by the board could be voted, the board not being unanimous in exercising the proxies, and that excluding the challenged proxies (231,135 votes) Shaw and Keough had been elected.

*Appellants' Argument:* It was ably argued to the trial court, as it was here, that the giving of a proxy creates a principal-agent relationship with the stockholder (here the depositor) being the principal and the proxy being the agent. It is a well-settled rule of agency law that when an agency is given to more than one person, it is presumed that the principal intended the agency to be joint and to be exercisable only by the unanimous action of the agents. *Unterberg v. Elder,* 211 N.Y. 499, 105 N.E. 834 (1914); *Dorsey v. Strand,* 21 Wn.2d 217, 150 P.2d 702 (1944). Restatement (Second) of Agency § 41 (1958). Appellants further contend that when a proxy is given to a board of directors, it must of necessity be given to the individuals who comprise the board. Appellants conclude that the members of a board, therefore, are joint agents with respect to a proxy given to the board and must exercise the proxy by unanimous action.

■ *Answer to appellants' argument:* The appellants rely on a well-settled rule of agency law; but we do not believe that the presumption should be applied where a proxy is given to a board of directors. In the usual case dealing with the joint agency presumption, the principal has appointed several named individuals as his agent, not a business entity comprised of individuals (subject to change from time to time, with the identity of the individuals comprising it possibly being entirely unknown to the person giving the proxy). *See* 3 Am. Jur. 2d *Agency* § 196, n.16 for a collection of the cases.

The rationale underlying the rule on which appellants rely is:

> [T]hat the nature of the act to be done or the business to be transacted is such that the principal desires to have the benefit of the combined experience, judgment, discretion, or ability of all of the agents. *Dorsey v. Strand, supra,* at 223.

This rationale does not apply in the present case where the proxy was contained in a signature card which the depositor was requested to sign at the time he opened an account.

The depositor, in all probability, was not seeking the expertise of the individual directors as proxies when he signed the signature card, indeed it is probable that he did not even know who the directors were; all he wanted to do was open a savings account in an institution in which he had confidence. Thus it cannot be said that the depositors intended to name the individual directors as their proxies.

We feel that the presumption of joint agency should not arise under these circumstances unless it has been clearly shown that the principal has named the individual directors, not the board of directors as a business entity, as his agent. This feeling is supported by those many decisions which hold that where an agency has been given to a partnership, any one of the partners acting within the scope of his authority as a partner can exercise the agency. In other words, when a partnership—a business entity comprised of individuals—has been appointed as an agent, the agency need not be exercised by the unanimous action of the individual partners. See 40 Am. Jur. Partnership § 151.

The appellants' theory, in practical operation, would produce at least two undesirable situations. First, a joint agency would be no longer exercisable when one of the joint agents could no longer act as an agent. Mechem on Agency, §§ 251, 261; Seavey on Agency, § 48(E). Thus, when one of the directors on the board dies, retires, or is otherwise no longer capable of acting on the board, the proxies would become void since the joint agency could no longer be exercised. New proxies would have to be solicited from the depositors (or stockholders) with every change in personnel on the board. In the present case, this was certainly not contemplated and would place an unreasonable burden on the operation of the association.

Second, as we have already pointed out in our Reason for the answer to the Quaere (see third paragraph of this opinion), one dissident director could disfranchise all who had given their proxies to the board, and thus enable a small minority to control an election. The present case presents a prime example of such a situation; the inability of a

majority of the board to exercise the proxies would have rendered void about 231,000 out of almost 297,000 votes or 78 per cent of the total, and appellants Shaw and Keough would have been elected on the basis of 34,355 and 34,252 votes respectively.

*Conclusion:* The comprehensive memorandum opinion of the trial court displays a complete grasp and understanding of all the issues. We may have differed with the trial court in some of our thought processes but based on the stipulated facts we arrive at the same ultimate answer to the *Quaere, i.e.,* that the board of directors properly exercised the proxies given to the board; consequently, the judgment appealed from is affirmed.

WEAVER, HUNTER, HAMILTON, and NEILL, JJ., concur.

January 29, 1969. Petition for rehearing denied.