[No. 43684.    En Banc.    December 4, 1975.]

LUCILLE DODD, ET AL, *Petitioners*, v. HARWOOD BANNISTER, ET AL, *Respondents*.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle,* by *Alfred J. Schweppe,* for petitioners.

*Harwood Bannister,* pro se, and *Michael E. Jacobsen* and *Paul N. Luvera, Jr.,* for respondents.

HOROWITZ, J.—This is a petition for investigation of claimed professional misconduct and its inadequate investigation under the Discipline Rules for Attorneys, filed in this court as an original proceeding. The petition prays the Washington State Bar Association, its Disciplinary Board and attorney Harwood Bannister, a member of the bar of this state, show cause why this court should not order an independent investigation to be made of certain claimed grievances against Mr. Bannister. The petition resulted in the issuance by the Acting Chief Justice of this court of an order requiring respondents to show cause why the relief requested should not be granted.

The record before us shows virtually no disagreement concerning the procedure used to investigate and process the complaints of the grievances described in the petition. However, the respective parties differ in important respects on whether the claimed grievances are factually justified and whether there is any justification for the imposition of discipline under the Discipline Rules for Attorneys.

At this juncture it would be premature to determine the merits of the grievances claimed and we do not do so. The record is sufficient, however, to enable us to deal with certain legal issues we must determine to rule on the peti-

tion. These issues are: (1) the petitioners' standing to invoke this court's jurisdiction to grant the relief claimed; (2) the power of this court to grant such relief; and (3) whether the power, if it exists, should be exercised. We answer each question in the affirmative and grant the relief claimed but in the manner later described.

The petition states Lucille Dodd and Maryl Livingston are the surviving daughters of the late John W. Brisky, an attorney-at-law of Mount Vernon, Washington, who died February 16, 1962. Mr. Brisky left a will. In that will he named his widow, Ella, as executrix and except for a nominal bequest to each of his daughters—petitioners here—he left his entire estate to his widow. The latter retained Harwood Bannister of Mount Vernon, Washington, to probate the decedent's estate. The probate administration of the estate was closed on May 15, 1963. Mrs. Brisky died about 10 years later.

On July 24, 1972, petitioners wrote a letter to the Washington State Bar Association charging Mr. Bannister with professional misconduct. After various steps were taken by the Bar Association, later briefly described, petitioners on March 24, 1975, filed the instant petition. The petition describes four specific grievances based on events occurring in the course of the probate proceedings in the John W. Brisky estate.

The following matters—essentially undisputed—should be borne in mind in order to understand the legal issues involved. Following petitioners' letter of July 24, 1972, the claimed grievances were assigned for investigation to Mr. Theodore D. Zylstra, an attorney in Oak Harbor, Washington, as a member of the Local Administrative Committee for Skagit-Island Counties, Washington. The record does not show who made the assignment for investigation. See Discipline Rules for Attorneys (DRA) 2.1. Thereafter petitioners cooperated with Mr. Zylstra and gave him all the information of which they had knowledge. There is no claim petitioners withheld their cooperation as contemplated by DRA 2.7.

Later Mr. Zylstra prepared and filed a "Report of Local Administrative Committee" stating therein he found "no facts to indicate that the complaints are well founded" and recommended the proceedings be dismissed. The report appears to have been sent by Mr. Zylstra to Mr. George E. McIntosh, Chairman of the Local Administrative Committee. By letter to the Washington State Bar Association, dated April 3, 1973, with notation thereon of copy to Mr. Zylstra, Mr. McIntosh stated his total concurrence with the findings and recommendation. There is no showing that a third member of the Local Administrative Committee had been appointed or functioned in the committee's work. There is no showing the two members who did function ever conferred or met to consider, analyze and evaluate the adequacy of the investigation, the correctness of the report and its recommendation, and then agreed thereon.

By letter dated April 11, 1973, from the association's executive director, to Maryl Livingston, the director generally summarized Mr. Zylstra's report and stated his conclusion "the facts do not merit disciplinary action" by the association. Petitioners were dissatisfied with the letter and they thereupon sought legal advice from private counsel whom they then retained. Petitioners' counsel, in his capacity as such, later formally requested the association reopen the Bannister case to examine four described specific grievances. Subsequently the Disciplinary Board met twice and considered the Zylstra report. On each occasion the Disciplinary Board agreed the complaints against Mr. Bannister be dismissed. Petitioners' counsel was so notified. Petitioners' counsel then requested an opportunity to appear before the Disciplinary Board. This request was denied on the ground the rules did not provide for such personal appearance. Petitioners' counsel then requested an opportunity to appear before the Board of Governors of the association. The president wrote, denying the request, explaining the board had no right or responsibility to review the decisions or recommendations of the Disciplinary Board.

Finally, at petitioners' request, petitioners' counsel wrote

Mr. Bannister on December 17, 1974, detailing the history of the handling of petitioners' complaints and requesting a conference with Mr. Bannister "for final consideration and action." It stated, in substance, that if Mr. Bannister was unwilling to confer or if the conference did not prove sufficiently productive, counsel would have no alternative but to file a petition for investigation in the Supreme Court as he had previously indicated would be done in an earlier letter dated October 25, 1973, to the chairman of the Disciplinary Board.

Mr. Bannister, although at first inclined to have such a conference, utlimately decided not to do so.[1] Petitioners then filed the instant petition and obtained the show cause order above described.

In general, each respondent takes the position the grievances have been thoroughly investigated and found to be without merit—and the court therefore should order this proceeding dismissed. Respondent Bannister denies any wrongdoing. By separate affidavit he has responded in detail to two of the four items of grievances the petition describes. The remaining two items are not specifically discussed. Overall, as pointed out, the record indicates sharp differences both of fact and law exist between the petitioners on the one hand and respondents on the other.

The present Discipline Rules for Attorneys (effective February 3, 1975), as well as the prior rules, have been promulgated for the purpose of investigating and processing charges of professional misconduct against members of

---

[1]Counsel for respondent Bannister relies upon this letter in supporting his contention the instant petition should be dismissed as a method of obtaining a private settlement. Giving this argument full effect, it would not follow the petition here must be dismissed. A private settlement may discharge the claims of the immediate parties as between themselves without preventing action to be taken pursuant to the Discipline Rules for Attorneys concerning claimed professional grievances. *See* DRA 2.1 (e) (2).

the bar of this state.[2] The Board of Governors has been granted broad power and overall responsibility to see to the proper discharge of the duties of those involved in the investigation of complaints of professional misconduct lodged against a member of the bar of this state. DRA 2.4(f)(4). The Board of Governors must appoint the members of the Local Administrative Committee. DRA 2.1(a). That board has general responsibility for the proper discharge of the committee's duties. DRA 2.4(f)(4) and DRA 2.1(c). Because the investigation report of the Local Administrative Committee "shall form a part of the permanent records of the Association and may be used as a basis for the commencement of disciplinary proceedings" (DRA 2.1(c)(2)(ii)), the importance of the supervising responsibility of the Board of Governors and of the Disciplinary Board later described is great indeed.

DRA 2.1 governs the creation, purpose and operation of the Local Administrative Committee. DRA 2.1(a) provides:

The Board of Governors shall appoint a Local Administrative Committee consisting of three or more members in each county or district as herein defined.

Like provision was in effect in the 1972-75 period preceding the present 1975 rule. DRA 2.1(a) (1969) (1973). Each committee member must have three qualifications: residence in the county or district of the committee, active Bar Association membership, and, since the 1975 rules, at least 5 years of practice as an attorney. DRA 2.1(a).

The committee's duties are to investigate each alleged or apparent violation of the rules of professional conduct coming to its attention, and to submit a report on each investigation to the Disciplinary Board within 30 days unless ex-

---

[2] All "DRA" references, unless otherwise noted, are to the rules effective February 3, 1975. Resolution of the issues presented makes unnecessary citation to the specific relevant Discipline Rules for Attorneys in effect in 1972-75. The substance of the relevant rules in the 1972-75 period is the same or sufficiently the same as the substance of the 1975 rules so as to permit the use of "DRA" references to the latter rules as a matter of convenience.

tended. DRA 2.1(c); and DRA 11.1(d). Even if the matter in question is settled by the parties involved before the committee can begin or finish its investigation, a complete investigation and report is still required. DRA 2.1(e)(2); and DRA 11.1(d).

The committee may make a conditional disposition of a complaint of a trivial nature. This disposition becomes final unless the Disciplinary Board acts otherwise within 60 days of receiving the committee's report on the investigation and disposition of the complaint. DRA 2.1(e)(1) and DRA 11.1(d).

The Disciplinary Board has the discretion, in lieu of referring a matter to a particular Local Administrative Committee, to appoint a special committee composed of members chosen from different Local Administrative Committees to conduct the investigation. DRA 2.1(f) and DRA 11.1(d). Or, the board may refer a complaint to the Bar Association's counsel or staff for investigation. The board may also direct the filing of a formal complaint without investigation.

DRA 2.1(c)(1) contemplates that complaints or grievances may be called to the attention of the Local Administrative Committee "whether by complaint or otherwise." The complaining party's sole function, however, is to "furnish to the Local Administrative Committee, the bar staff, or State Bar Counsel documentary and other evidence in his or her possession and the names and addresses of witnesses, and assist in securing evidence in relation to the facts charged." DRA 2.7.

DRA 2.4 deals with the composition and responsibilities of the Disciplinary Board.[3] Its responsibilities are described in subparagraph (f) as follows:

(1) *General.* The Board shall have the powers and duties provided in these Discipline Rules for Attorneys, together with those delegated to it in writing by the Board of Governors.

___

[3]DRA 5, which deals with the board's duties in a contested hearing, is not applicable here.

(2) *Specific.* The Board shall review all reports or allegations of violations of the rules of professional conduct or matters within the purview of Rules 4.1-.4 and take such action pursuant to these Discipline Rules for Attorneys as it deems appropriate.

There is no provision under DRA 2.4, or otherwise, for an independent investigation by the Disciplinary Board itself of the claimed grievances. Moreover, there is no provision in the discipline rules for complainant to appear as a party before the Disciplinary Board. The board basically relies upon the report of the Local Administrative Committee to determine what disposition it should make of the complaint of grievances. It is at least implicit in the rules that if the Disciplinary Board has knowledge of material facts not included in the report, or if the report seems otherwise deficient, the Disciplinary Board may refer the report back to the Local Administrative Committee for further information and further investigation. Moreover, if the Disciplinary Board has any doubt concerning its powers, it is at least implicit in the rules that the Disciplinary Board may make inquiry of the Board of Governors concerning what it may do. The Board of Governors, in the discharge of its responsibility to see to the proper functioning of the Local Administrative Committees, the Disciplinary Board, the bar staff and bar counsel (DRA 2.4(f)(4)), is impliedly empowered to answer the Disciplinary Board's inquiry.

The foregoing review of the rules makes it clear the investigative work of the Local Administrative Committee is vital to the proper functioning of the investigation and processing procedure that follows the filing of the committee's report. Any action taken upon a complaint of professional misconduct under the rules by the Disciplinary Board may rest upon the findings, conclusions and recommendation of the investigating Local Administrative Committee. DRA 2.4(f)(2). To the extent therefore that the Local Administrative Committee fails to discharge its duties in the manner contemplated by the rules, the determinations made by the Disciplinary Board may rest upon

defective findings and correspondingly unsound conclusions and recommendations.

Petitioners recognize that the Local Administrative Committee called for by DRA 2.1(a) requires a membership of three or more. The record shows that in the instant case either there were only two members appointed or only two members functioning, and even in the latter case the record fails to show the two functioning members did so by conferring with one another.

The purpose of the requirement of multiple membership of three or more on the Local Administrative Committee is at least twofold: (1) Subject to purpose 2, to permit the work load of the committee to be shared; and, (2) to require the members of the committee by mutual discussion and consideration of the nature and scope of the investigation to be pursued, the conclusions to be reached, and the recommendation to be made, to come to a result commanding confidence. As to the first purpose, DRA 2.1(a) and (c) permit the work of investigation to be carried out by one or more of the members of the committee. However, the second purpose requires that all committee members confer upon the investigation and vote upon the findings, conclusions and recommendation contained in the entire report.

The three-member committee functions in much the same way as joint agents function both in private and public law. In private agency law, "[o]rdinarily, where one authorizes two or more persons to act for him, he expects that they will act as a group in the exercise of judgment." Restatement (Second) of Agency § 41, comment *a* (1958). As stated in *Dorsey v. Strand*, 21 Wn.2d 217, 223, 150 P.2d 702 (1944):

> It is a general rule that, when authority is given to two or more persons to act as agents in a matter of a private nature, it is presumed to be joint and all must act jointly in order to bind the principal . . . The rule is based upon the idea that the nature of the act to be done or the business to be transacted is such that the principal desires to have the benefit of the combined experience,

judgment, discretion, or ability of all of the agents. We find nothing in the manner of selecting the committee of three or the duties to be performed by them indicating any intent other than that they should act jointly.

*Accord, Keough v. Kittleman*, 74 Wn.2d 814, 447 P.2d 77 (1968).

In *Powell v. Tuttle*, 3 N.Y. 396 (1850)—an old case—but using a rationale eminently sound today, the court was concerned with the construction of a statute which delineated the duties of two "commissioners" in conducting foreclosure sales of mortgaged land. The statute did not say that the two commissioners were to act jointly in making each sale. The court, however, held that by the use of the word "commissioners" in each section of the statute:

> [T]he legislature seems to have contemplated the presence and participation of both commissioners in every official act. I think it very clear, that it was intended to secure, in every essential act to be performed by the commissioners, their joint deliberation and united judgment. When a duty merely mechanical is to be performed, as in the case of fixing up the advertisement of sale, the commissioners are authorized to CAUSE such duty to be performed. But when any act is to be done, which involves, in any degree, the exercise of discretion, it seems to have been the policy and purpose of the legislature, to secure the benefit of the joint exercise of such discretion by the commissioners themselves.

*Powell v. Tuttle, supra* at 400-01.

It follows that the long settled related rule is that "several joint agents cannot delegate to one of their number the performance of the duties intrusted to them jointly," 3 C.J.S. *Agency* § 258 (1973).

■ In the case of a public trust or public agency, the decision of the joint agents may be reached by a majority vote. Nevertheless the agents must be present to deliberate or must be duly notified to have an opportunity to be present. F. Mechem, *Law of Agency* § 199 (2d ed. 1914). 4 E. McQuillin, *Law of Municipal Corporations* § 13.30, at 511-12 (3d ed. rev. 1968), stated:

[W]here authority to do an act of a public nature is given by law to more persons than one . . . if the act is one which requires the exercise of discretion and judgment, in which case it is usually termed a judicial act, unless provision is otherwise made by law, the persons to whom the authority is given must meet and confer and be present when the act is performed, in which case a majority of them, but no less, may perform the act . . .

In *State ex rel. Baria v. Alexander*, 158 Miss. 557, 562, 130 So. 754 (1930), the court said:

Where several persons are authorized to perform a public service, or to do an act of a public nature as an organized body, which requires deliberation, they must be convened in a body, in order that they may have the counsel and advice of every member . . . Any action otherwise taken, although with the consent of the majority of the members of the body, is illegal.

As in the case of private agency law, discretionary powers of joint agents who are public agents may not be delegated. *Lotspeich v. Mayor & Aldermen of Morristown*, 141 Tenn. 113, 207 S.W. 719 (1918); *Murphy v. Greensboro*, 190 N.C. 268, 129 S.E. 614 (1925); *Tempel v. Dodge*, 89 Tex. 68, 32 S.W. 514 (1895); *Rutland & B. R.R. v. Thrall*, 35 Vt. 536 (1863); 2 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 496, at 515-16 (1969).

The Washington State Bar Association is created by RCW 2.48.010 as an "agency of the state." It is therefore a public rather than a private agency. A Local Administrative Committee appointed by the Bar Association's Board of Governors, as an arm of a public agency, must operate in accordance with the above rules of agency applicable to public, rather than private, bodies.

We now turn to a consideration of the three legal questions above described: (1) Do the petitioners have standing to invoke this court's jurisdiction to grant the relief claimed? Petitioners as members of the public have by their petition brought to the court's attention the fact that respondents, Washington State Bar Association, the

Disciplinary Board and the Local Administrative Committee, in making and processing their investigation of petitioners' complaints have failed to comply with the rules of the court promulgated to regulate the procedure to be used. Petitioners have cooperated in making available to the members of the Local Administrative Committee all the information petitioners have in their possession. There is no claim to the contrary. Only after pursuing all means available to them under the rules to gain a proper investigation under the rules, have they invoked the jurisdiction of this court to obtain an investigation in compliance with the rules governing investigation of grievances against a member of the bar.

It is not disputed this court has power to promulgate rules of discipline, to interpret them and to enforce them. *See* RCW 2.48.060; *State ex rel. Schwab v. State Bar Ass'n,* 80 Wn.2d 266, 269, 493 P.2d 1237 (1972); *In re Moody,* 69 Wn.2d 808, 811, 420 P.2d 374 (1966); *In re Supreme Court License Fees,* 251 Ark. 800, 483 S.W.2d 174, 175 (1972); *Petition of Dade County Bar Ass'n,* 116 So. 2d 1, 4-5 (Fla. 1959). This court also has inherent power to order an investigation of grievances if it considers the information it receives of sufficient moment to warrant such investigation. *See In re Simmons,* 65 Wn.2d 88, 94, 395 P.2d 1013 (1964); *In re Sherman,* 58 Wn.2d 1, 8, 354 P.2d 888, 363 P.2d 390 (1960-61); *People ex rel. Karlin v. Culkin,* 248 N.Y. 465, 162 N.E. 487, 60 A.L.R. 851 (1928); Potts, *Disbarment Procedure,* 24 Tex. L. Rev. 161, 175 (1946).

The fact the court receives information that its rules of discipline have not been followed by those charged with responsibility to do so, in the form of a petition for investigation, should not derogate from the court's inherent power to enforce its rules by ordering an investigation of the complaints in the manner provided by those rules. Petitioners have standing sufficient to bring the matter of failure to follow the rules governing investigations to the court's attention in the form they have chosen, after having taken,

without success, all steps reasonably available to them to obtain the investigation called for by and pursuant to the rules.

The second question is whether the court has power in the absence of express provision therefor in the Discipline Rules for Attorneys to entertain this petition and grant the relief requested. If the power is inherent, as we hold it is, there is no necessity for the rules of the court to expressly affirm the existence of such power. It is therefore no defense to the petition that the investigation of the charges has been completed in the manner described and the conclusion reached that those charges should be dismissed.

The fatal flaw here is the failure to appoint the required minimum number of committee members called for by DRA 2.1(a) or the failure of such a committee to function as joint agents in discharging their responsibilities under the Discipline Rules for Attorneys. The completed investigation and processing of petitioners' complaints did not conform to the rules. In the face of the disputed versions of the facts disclosed in the record, and the differences in legal position taken on the merits of the claimed grievances, only an investigation made as the rules require will reveal whether the findings, conclusions and recommendation are justified.

The third question is whether, and how, the power of this court should be exercised. For the reasons already stated we think a sufficient legal showing has been made requiring us to exercise the power invoked. We refrain from detailing the charges and the evidence claimed to support them because, until the investigation is had, as called for pursuant to the applicable Discipline Rules for Attorneys, we do not wish to say anything that might be used or construed to prejudice consideration of the merits of those charges either directly or by inference.

Petitioners ask this court to direct the Board of Governors to correct the deficiencies in the investigative procedure by referring their complaints to a new Local Adminis-

trative Committee composed of Local Administrative Committee members from other counties. DRA 2.1(f)(1). We believe, however, that since the Board of Governors of the Washington State Bar Association is given broad power and responsibility for "the proper functioning of the Local Administrative Committees . . . the Disciplinary Board, the bar staff, and bar counsel" (DRA 2.4(f)(4)), the matter of how the ensuing investigation should be conducted is properly referred to the Board of Governors of the Bar Association.

We have no doubt that the disposition now made will enable the ensuing investigation to proceed and to be processed in the manner contemplated by the rules.

Petition granted.

FINLEY, ROSELLINI, HUNTER, WRIGHT, UTTER, and BRACHTENBACH, JJ., and COCHRAN and HENRY, JJ. Pro Tem., concur.