[No. 44632. En Banc. April 20, 1978.]

LAWRENCE W. MOORE, *Respondent,* v. LYLE SMITH, ET AL, *Appellants.*

934

*Reed, McClure, Moceri & Thonn, P.S.,* by *William R. Hickman* and *John W. Rankin, Jr.,* for appellants.

*Lawrence Moore,* pro se, *Neil J. Hoff,* and *J. Bruce Burns,* for respondent.

HAMILTON, J.—Lawrence Moore, attorney and respondent, brought suit against the City of Tacoma, Tacoma Police Chief Lyle Smith, and two police officers, alleging defamation of professional reputation, false arrest, and malicious prosecution. The trial resulted in a general verdict in favor of Moore. All defendants appeal assigning error to various rulings of the trial court. They urge: (1) the communication which forms the basis of the defamation action is absolutely privileged; (2) the court erred in admitting certain testimony regarding the State Bar Association disciplinary process; (3) the court erred in excluding an exhibit which contained statements relating to Moore's reputation; (4) a new trial should have been granted because Moore's attorney revealed his status as a governor of the Bar Association to the jury; (5) there was insufficient evidence of malicious prosecution; and (6) the damage instruction was erroneous. We have considered each of these issues and affirm.

The facts in support of Moore's claims are somewhat complex and require detailed discussion. The testimony established that on February 2, 1974, respondent Moore received a telephone call from a former client who requested that Moore come to a Tacoma residence where a police investigation was underway. Moore proceeded to the residence and on arrival observed two police officers as well as approximately six other persons. Perceiving his duty as an attorney to require that he determine the nature of the police activity in order to safeguard his client's rights, Moore approached the house and confronted the officers. One officer indicated that they were looking for a Jerry Dupont. Moore then asked whether the officers had a search warrant for the premises. The officers stated they did not need a warrant and after some further discussion continued questioning the occupants of the house, asking for identification evidently in an effort to locate Dupont. During this process it came to the officers' attention that a person named Albert Turner, for whom they believed an arrest warrant was outstanding, was present. A heated discussion developed between an officer and yet another occupant of the house when Turner was asked for identification. One officer followed the owner of the house out through the back door and when he attempted to reenter the house, he was told by Moore to use the front door. At this point an initial "threat" of some sort was made by the officer directed toward Moore; however, as requested, the officer proceeded around to the front of the house. The arrest warrant for Turner was then verified, and he was placed in custody. Since the officers still had not located Dupont, they asked for and obtained consent for a single officer to enter and search the residence.

The testimony regarding the course of events from this point forward is less precise. The witnesses are in agreement that police sergeant Favre, one of the defendants, arrived on the scene. He was initially confronted by Moore, told he could not enter and that only one officer at a time was permitted entry. Moore explained he would contact the

officer who was inside the residence. Sergeant Favre testified he was concerned for the officer's safety, observed a disturbance inside the house, and thus ordered Moore under arrest for interfering with a police officer. Moore was searched, handcuffed, and placed in a police vehicle.

The criminal charge of interfering with a police officer came to trial and resulted in an acquittal. Two days after the original incident, however, and prior to resolution of the criminal charge, Chief Smith sent a letter to the Tacoma–Pierce County Bar Association filing a formal complaint concerning Moore's activities and alleging unprofessional conduct. The Washington State Bar Association then investigated the complaint and did not take disciplinary action against Moore.

At the defamation trial, Neil Hoff, Moore's attorney, called a member of the State Bar Association Disciplinary Board to testify regarding disciplinary procedures. The letter was admitted and Mr. Hoff questioned the Chief about the letter. In an apparent effort to show police ill will toward Moore, Hoff inquired why the Chief chose to write a letter to the Bar Association rather than contact him directly, since the Chief was aware of his status as a governor of the Washington State Bar Association. The defense moved for a mistrial following the disclosure of this fact. The motion was denied, but the court later gave a curative instruction directing the jury to disregard Hoff's status with the Bar Association.

After presentation of evidence, the court instructed the jury on the law relative to all claims. The court's damage instruction for the malicious prosecution claim permitted inclusion of a reasonable expense for attorney fees. The jury returned a general verdict awarding Moore $18,000 in damages.

Appellants contend the occasion on which the Chief's letter was communicated was absolutely privileged, and thus no liability results.

█ All privileges, conditional or qualified, and so–called absolute, are founded on policy considerations. Absolute

privilege as it developed has been confined to cases where obvious public interests and the administration of justice require that free speech prevail over the right to preserve one's reputation. W. Prosser, *Handbook of the Law of Torts* § 114 (4th ed. 1971). If an absolute privilege applies to defamatory publications, however false or malicious, complete immunity follows. *Gold Seal Chinchillas, Inc. v. State,* 69 Wn.2d 828, 420 P.2d 698 (1966). Because of this extraordinary scope, absolute privileges have been limited to situations in which authorities have the power both to discipline persons whose statements exceed the bounds of permissible conduct and to strike such statements from the record. *Twelker v. Shannon & Wilson, Inc.,* 88 Wn.2d 473, 564 P.2d 1131 (1977). *Engelmohr v. Bache,* 66 Wn.2d 103, 401 P.2d 346 (1965).

In addition to these considerations, the complete immunity of absolute privilege is afforded only if there exists some *compelling* public policy justification. *Twelker v. Shannon & Wilson, Inc., supra.*

In applying these criteria to this case, we first note that the publication by Chief Smith was directed to a local voluntary bar association. This association, as opposed to the State Bar Association, was without the power to discipline a speaker whose conduct exceeded the "bounds of permissible conduct" or to strike a statement from the record. We are reluctant to adopt any rule which would place a burden on lay persons requiring that they make fine distinctions when attempting to air legitimate grievances against attorneys or risk the forfeiture of a privilege. For this reason, the privilege should apply alike to occasions on which one communicates with either a local or state bar association.

As we examine the policy considerations, however, we see no compelling justification for extending an absolute privilege in this situation. We conceive of no conditions presently existing within the bar, nor have appellants demonstrated any, sufficient to warrant placing attorneys under a disability suffered by no other profession. We therefore decline to follow the reasoning of the Oregon

court in *Ramstead v. Morgan,* 219 Ore. 383, 347 P.2d 594, 77 A.L.R.2d 481 (1959), as urged by appellants. That opinion does not adequately reconcile two important but often conflicting interests: an individual's right to a good reputation and society's interest in protecting full disclosure of facts relating to a person's qualifications and conduct.

■ An attorney is entitled to no less protection than the law extends to members of other professions who have the benefit of a cause of action for defamation which results from communications sent to professional associations, clients or other professionals. In such cases, courts have reconciled the individual's reputation rights and society's interest in protecting legitimate criticism of the qualifications of those who perform public service by the application of conditional or qualified privilege. *See, e.g., Anderson v. Reynolds,* 342 F. Supp. 101 (D. Utah 1972) (physician suing law enforcement officers); *Segall v. Piazza,* 46 Misc. 2d 700, 260 N.Y.S.2d 543 (1965) (teacher suing parent of a student); *Jankelson v. Cisel,* 3 Wn. App. 139, 473 P.2d 202 (1970) (dentist suing former patient).

We believe the above approach is the correct one, and thus here adopt the view that a conditional or qualified privilege attaches to publications made in good faith and without malice on occasions when a person communicates with a local or state bar association. This privilege protects the interests of the bar association, the publisher, the community, and strikes the appropriate balance necessary to protect a professional reputation.

■■ The defense of qualified privilege was described by this court in *Owens v. Scott Publishing Co.,* 46 Wn.2d 666, 674, 284 P.2d 296 (1955). Once the existence of an occasion of qualified privilege is established, the burden of proof to demonstrate abuse of privilege shifts to the plaintiff. A simple mistake, innocently made through ignorance of legal practices, will not destroy the privilege. *Conley v. Southern Import Sales, Inc.,* 382 F. Supp. 121 (M.D. Ala. 1974); Restatement (Second) of Torts § 594, comment *b;* §

595, comment *b;* § 600, comment *b* (1977).[1]

Our recognition of qualified privilege in this case is not meant to suggest that attorneys are not subject to the very highest standards of personal and professional integrity. Indeed, it is this court's duty to maintain such standards and to protect the public from possible misconduct of attorneys. *In re Krogh,* 85 Wn.2d 462, 536 P.2d 578 (1975); *In re Smith,* 83 Wn.2d 659, 521 P.2d 212 (1974). Absolute privilege, however, would not serve these ends. It would, on the contrary, encourage the filing of an excessive number of groundless complaints. Those who on reasonable grounds believe they have a legitimate grievance against an attorney need no additional inducement to file a complaint. The present disciplinary process of the Bar Association,[2] functioning as it does on a state and local level to resolve grievances, effectively encourages utilization of the complaint process. Where it is brought to our attention that the Washington State Bar Association Disciplinary Board or local administrative committee has failed to carry out its duties regarding discipline, we will protect the process by exercising our inherent power to review the entire matter. *Dodd v. Bannister,* 86 Wn.2d 176, 543 P.2d 237 (1975). This encouragement and protection together with a conditional or qualified privilege adequately insure free and open

---

[1] An explanation of the Restatement position is summarized in Wade, *Defamation, The First Amendment and the Torts Restatement,* 11 Forum 3, 10–11 (1975).

The Restatement observes that one consequence of the recent decision of the United States Supreme Court in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), is that "mere negligence as to falsity, being required for all actions of defamation, is no longer treated as sufficient to amount to abuse of a conditional privilege." Restatement (Second) of Torts § 600, comment *b* (1977). Since a qualified privilege based on reasonableness would be superfluous in light of *Gertz,* the American Law Institute adopted a recklessness standard. For a discussion of the possible impact of *Gertz, see* Eaton, *The American Law of Defamation through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer,* 61 Va. L. Rev. 1349 (1975); *see also* Comment, *Qualified Privilege to Defame Employees and Credit Applicants,* 12 Harv. Civ. Rights–Civ. Lib. L. Rev. 143, 153–65 (1977).

[2] We outlined this process in *Dodd v. Bannister,* 86 Wn.2d 176, 180–83, 543 P.2d 237 (1975).

discussion of the qualifications or conduct of attorneys.

Respondent suggests the failure of appellants to request an instruction on qualified privilege renders it inapplicable to this case. Appellants, on the other hand, argue that regardless of the failure to request a jury instruction on the issue of qualified privilege, we should allow them to avail themselves of any determination we make on this subject. This is so, they argue, because, having made a good faith attempt to foresee the changing shape of the law, they should not be penalized for failure to exactly formulate instructions in accord with our holding today.

We have, in limited cases in which revision of the law was imminent, excused literal compliance with court rules requiring proposal of instructions. *See Memel v. Reimer,* 85 Wn.2d 685, 538 P.2d 517 (1975); *Miller v. Kennedy,* 11 Wn. App. 272, 522 P.2d 852, *review granted,* 84 Wn.2d 1008 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975). Appellants, however, were not faced with such a situation. Our decisions have clearly restricted the application of absolute privilege while we have frequently discussed the applicability of qualified privilege. *Engelmohr v. Bache,* 66 Wn.2d 103, 401 P.2d 346 (1965); *Owens v. Scott Publishing Co., supra,* and cases cited therein; *Getchell v. Auto Bar Sys. Northwest, Inc.,* 73 Wn.2d 831, 440 P.2d 843 (1968).

Appellants' entire case was presented on the theory of absolute privilege. The theory of qualified privilege was not embodied in a proposed instruction, nor was appellants' exception to the court's general instructions on defamation sufficient to apprise the trial judge of the points of law involved. Appellants' failure to take a proper exception or propose an instruction precludes reversal on this point. *Spangler v. Glover,* 50 Wn.2d 473, 313 P.2d 354 (1957).

Appellants next contend the trial court should have excluded all testimony by George Dixon, a member of the State Bar Association Disciplinary Board. Dixon's testimony outlined the structure of the disciplinary process; he described the functions of the local administrative committee as well as the disciplinary board. He also testified that

he personally investigated the Chief's complaint and concluded there was no ethical violation.

Appellants' argument is that Dixon's testimony was speculation. We fail to see how the factual recitation of disciplinary sanctions by a witness fully knowledgeable about the disciplinary process was speculation. Appellants also suggest the testimony of Dixon invaded the court's or jury's province by expressing an opinion on the law and ultimate fact of liability.

The only portion of this testimony which arguably invaded the province of either court or jury was Dixon's conclusion that there was no violation of professional ethics by Moore. This conclusion might be interpreted as an opinion on the truth of the communication. The testimony was improper under DRA 11.7; however, we do not feel that under the facts of this case it rises to the level of invading the court's or jury's province.

Appellants' final argument relating to the defamation action concerns the admissibility of an exhibit—a sworn statement by a third party implicating Moore in criminal activity. Appellants sought to introduce this exhibit for two reasons. First, they argued it evidenced Moore's reputation. Second, they urged it indicated the reasonableness of the Chief's statement about a prior "unsatisfactory encounter" with Moore. After lengthy argument, the court excluded the exhibit as hearsay but allowed testimony regarding the circumstances surrounding Moore's prior police encounter.

The respondent contends the sworn statement was properly excluded by the court as hearsay. We cannot completely agree. Our review of the purposes for which the exhibit was offered leads us to conclude it was offered in part to mitigate damages as evidence of reputation and not to prove the truth of the matter stated therein. To the extent it was so offered, it was not hearsay. E. Cleary, *McCormick's Handbook of the Law of Evidence* ch. 24, § 249 (2d ed. 1972); 5 J. Wigmore *Evidence* § 1609 (3d ed. 1940). This conclusion, however, does not necessitate a finding of error for several reasons. Appellants were not

prohibited from presenting testimony about Moore's previous encounter with the police. In addition, the substance of the allegation contained in the statement came out through Moore's explanation of his prior involvement with the police. Thus, no prejudicial error resulted from the exclusion of the exhibit. *Gaffney v. Scott Publishing Co.*, 41 Wn.2d 191, 248 P.2d 390 (1952). The trial court's exclusion of this exhibit was not reversible error.

Appellants next argue the court should have granted a mistrial or a new trial because disclosure to the jury that Moore's attorney was a member of the Board of Governors of the Washington State Bar Association was highly prejudicial to their case. The court, rather than grant appellants' request, chose to give the jury a curative instruction shortly after the disclosure.[3]

An order denying a new trial will not be reversed except for abuse of discretion. The criterion for testing abuse of discretion is: "[H]as such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial?" *Slattery v. Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932); *Johnson v. Howard*, 45 Wn.2d 433, 275 P.2d 736 (1954). A stronger showing would be needed to set aside an order granting a new trial than one denying a new trial. *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651 (1962).

While counsel's remark was improper, we do not believe it was so flagrant or prejudicial that the court's curative instruction could not neutralize the effect. This is particularly true where a curative instruction closely follows an

---

[3] "[T]his morning there was some discussion of the fact that Mr. Hoff is a member of the Board of Governors of the Washington State Bar Association. You are cautioned that that does not bear on any of the issues in this case. He may also be a member of the Elks or National Reserve or anything else and that is simply something that he is a member of . . . [H]e is not here as a member of the State Bar Association representing the Association and that Association has no place in this trial other than as it has given some sanction to the canons of professional ethics and has some authority in the disciplinary process but he is not representing them, he is employed as private counsel for the plaintiff here is all." (Statement of Facts 251-52.)

improper remark. Accordingly, we find no abuse of discretion in the denial of a new trial.

Appellants also assert the evidence of malice was insufficient to warrant submission of the claim for malicious prosecution to the jury. In reviewing the record, we note the police officers who testified said they had a poor opinion of Moore, and further these opinions appear to have been formed some time prior to Moore's arrest and criminal charge on February 2, 1974. The jury heard extensive but somewhat conflicting testimony about the circumstances surrounding the arrest. It was established that one of the arresting officers in some way threatened Moore. At the time of the arrest Moore was handcuffed, although there had been no resistive conduct on his part. In addition, the officers and jailers, with full knowledge of Moore's profession and residence in the community, booked him into the Pierce County jail and required him to be held until cash bail or bond was secured.

Appellants and respondent agree the determinative law is stated in *Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485, 125 P.2d 681 (1942), which we followed in *Barker v. Waltz,* 40 Wn.2d 866, 246 P.2d 846 (1952). In *Barker,* we found that an inference of malice was not necessarily justified by a mere showing of want of probable cause. Quoting from *Ton v. Stetson,* 43 Wash. 471, 86 P. 668 (1906), we noted that:

> If, in connection with the *prima facie* showing of want of probable cause, affirmative acts of the respondent had been shown disclosing the least feeling of bitterness, animosity or vindictiveness towards the appellant, then it might be that an inference of malice would be justified . . .

*Barker v. Waltz, supra* at 870.

This statement is pertinent to the present case as affirmative acts disclose more than the least feeling of bitterness. We are of the opinion that the officers' testimonies and the surrounding circumstances of Moore's arrest and prosecution are sufficient to justify an inference of malice.

The court therefore properly submitted the malicious prosecution claim to the jury.

The sixth and final assignment of error is based upon the court's damage instruction. The court, in giving the case to the jury, read an instruction which permitted assessment of Moore's attorney fees for his criminal defense as damages.[4] Appellants argue this item was not supported by *substantial evidence* and was submitted in error.

■ The determination of the propriety of a damage instruction is not, as appellants suggest, measured by a substantial evidence test. Once liability for damages is established, a more liberal rule is applied in allowing assessment of the amount of damages. *Larson v. Union Inv. & Loan Co.,* 168 Wash. 5, 12, 10 P.2d 557 (1932). In this case there was evidence which afforded a reasonable basis for estimating respondent's loss. The criminal trial transcript was admitted into evidence for members of the jury to examine. They were thus able to calculate the time spent in trial and award Moore reasonable compensation. Although the court's instruction could have been more precisely worded, this is not a case where the amount of damages was determined by conjecture. For this reason, reversal

---

[4]Instruction No. 24 is as follows:

"It is the duty of the court to instruct you as to the measure of damages. By instructing you on damages the court does not mean to suggest for which party your verdict should be rendered.

"If your verdict is for the plaintiff, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the wrongful conduct of the defendants.

"If you find for the plaintiff on his cause of action against the defendants for libel per se, then you are instructed that the plaintiff is not required to introduce evidence of actual damage to entitle him to substantial damages since the law presumes damages.

"If you find for the plaintiff on his other causes of action, then your verdict should include the following items:

"1. Mental anguish, embarrassment and humiliation experienced and reasonably certain to be experienced in the future.

"2. The reasonable expense of plaintiff for legal defense."

and a new trial on the issue of damages are not warranted. Accordingly, the judgment is affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Petition for rehearing denied June 9, 1978.