R. A. PEACOCK, M. L. Coffer, and H. J. Wilson, Appellants,

v.

LUBBOCK COMPRESS COMPANY, Appellee.

No. 16922.

United States Court of Appeals
Fifth Circuit.

March 4, 1958.

Bill A. Davis, Huff & Splawn, Lubbock, Tex., for appellants.

J. A. Gooch, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This whole case turns on one word. Does the word "and" mean *and*? Does it mean *or*? May it have been primarily used as a comma?

The question arises in connection with an FLSA suit for overtime wages brought by three night watchmen against the Compress Company who, admittedly, was subject to the Act, and had employed them for eighty-four hours each week at a wage in excess of the minimum hourly rate (75¢) but without payment of overtime. The dispute narrows down to Section 207(c) with emphasis on the few words italicized:

"In the case of an employer engaged in the first processing of milk, buttermilk, whey, skimmed milk, or cream into dairy products, *or in the ginning and compressing of cotton,* or in the processing of cottonseed, or in the processing of sugar beets, sugar-beet molasses, sugarcane, or maple sap, into sugar * * * the provisions of subsection (a) * * * [29 U.S.C.A. § 207(a) requiring overtime] shall not apply to his employees in any place of employment where he is so engaged * * *."
29 U.S.C.A. § 207(c), Section 7 of the Act.

The statute, of course, says "ginning *and* compressing of cotton." If it is conjunctive, the watchmen are right, the Compress is wrong, and the cause must be reversed. This is so because it is admitted that the Compress Company is engaged exclusively in compressing cotton and never has engaged in the activity of ginning cotton or a combination of ginning and compressing. Actually, it cuts much deeper since it is an acknowledged undisputed fact of the cotton industry that compressing is an operation

entirely removed from ginning and that the two are never carried on together. To read it literally here is to read it out of the statute.

■ But the word "and" is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings. Nor has the law looked upon it as such. It is ancient learning, recorded authoritatively for us nearly one hundred years ago, echoing that which had accumulated in the previous years and forecasting that which was to come,[1] that, "In the construction of statutes, it is the duty of the Court to ascertain the clear intention of the legislature. In order to do this, Courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" United States v. Fisk, 1866, 3 Wall. 445, 448, 70 U.S. 445, 448, 18 L.Ed. 243, 244, and see Heydon's Case (1584), 3 Co. 7a.

■ In searching then for the Congressional purpose, there appears to be no basis for concluding that the exemption was to be confined to those engaging in *both* ginning and compressing. Indeed, the contrary appears. The great concern of Congress was to exempt agriculture as such from the Act. Maneja v. Waialua Agricultural Co., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040. Once it set out to shore up that basic exclusion, certain operation such as those defined in Section 207(c) were specifically removed so far as *hours* were concerned, and other operations of the kind described in 213 (a) (10) within the area of production to be defined administratively were taken[2] out from the Act as to both *hours* and

[1.] Hundreds of cases are conveniently collected in Vol. 3, Words and Phrases, under the title word "And," at page 569, and see especially pages 583–593 under the heading of "Civil Statutes." Whatever the particular meaning attributed to the word or words may be in each of these collected cases, the universal test may be summarized. The words "and" and "or" when used in a statute are convertible, as the sense may require. A substitution of one for the other is frequently resorted to in the interpretation of statutes, when the evident intention of the lawmaker requires it.

[2.] 29 U.S.C.A. § 213(a) (10): "The provisions of sections 206 and 207 * * * [29 U.S.C.A. §§ 206, 207] shall not apply with respect to * * * (10) any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, *ginning, compressing,* pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products." (Emphasis supplied.)

*wages*. The latter, Section 213(a) (10), note 2, supra, was to make certain that for services described in it, the small farms forced to use nearby independent contractors, or the like, would not be worse off than larger integrated farms equipped with their own facilities.[3] In that Section, Congress did not even find it necessary to use the descriptive term "cotton." So long as the operation is within the area of production as promulgated, the 213(a) (10) exemption applies to ginning of cotton, the compressing of cotton, or either one or both of them.

Of course the two sections, 207(c) and 213(a) (10) are not complementary and are intended to, and do, accomplish different objectives. Maneja v. Waialua Agricultural Co., supra. But if either of the two activities, ginning *or* compressing, was such as to warrant exemption within the geographical-population limits of the area of production, Mitchell v. Budd, 350 U.S. 473, 76 S.Ct. 527, 100 L.Ed. 565, from the whole Act, it seems highly improbable[4] that Congress in mentioning the two again deliberately set out to prescribe a standard impossible to meet as

to the hours-overtime exemption of 207 (c).

If Congress did not intend the Section 207(c) exemption to apply to those same operations described in 213(a) (10) "ginning, compressing," all it had to do was to omit altogether any reference to this activity in 207(c). To accomplish any such assumed objective, it was not necessary for Congress to go at it by the roundabout method of appearing to grant it only to take it away by the prerequisite of a dual combination of "ginning *and* compressing" of cotton.[5]

For us to conclude that Congress meant "and" in a literal conjunctive sense is to determine that Congress meant in fact to grant no relief. To do this is to ignore realities, for Congress has long been acutely aware of the manifold problems of the production, marketing and distribution of cotton. The commodity is one of the most important in the complex pattern of farm parity and production control legislation. It is inconceivable that Congress legislated in ignorance of the distinctive nature of the physical operations of ginning of cot-

3. Maneja v. Waialua Agricultural Co., 349 U.S. 254, 268, 75 S.Ct. 719, 727, 99 L.Ed. 1040, 1055: "Thus, for example, the cotton farmer without a gin was placed on an equal footing with farms who ginning their own cotton, since each could have their cotton ginned by employees who were covered by neither the wage nor the hour provisions of the Act."

4. Maneja v. Waialua Agricultural Co., 349 U.S. 254, 267, 75 S.Ct. 719, 727, 99 L.Ed. 1040, 1954: That case involved the processing of sugar cane into sugar. The Court's reference to "cotton ginning" alone and not in conjunction with compressing indicates, however, that it saw no decisive significance in the coupling word "and." To the suggested argument that the express exemption in 207(c) from overtime liabilities was a deliberate choice by Congress to limit relief to overtime, the Court said: "But we cannot be sure of this, because § 7(c) [207(c)] includes similar exemptions for operations like *cotton ginning, which also come within the agricultural exemption if performed by the farmer on his own crops. More significant is the omission of sugar milling from the exemption provided by §* 13(a) (10) [§ 213(a) (10)] from various

processing operations performed within the area of production." (Court's italics.)

5. The sparse legislative history on the point as set forth in the briefs is unilluminating. Apparently in its original form, Senate Bill 2475, 75th Congress, granted the overtime exemption for "the ginning and bailing of cotton." The "bailing" is an integral part of the "ginning" process. In Committee "compressing and storing" of cotton was added. This was accomplished by merely striking out the word "bailing" and inserting the words "compressing and storing." H.R.Rep. 1452, Senate Bill 2475, August 6, 1937, 75th Congress, 1st Sess. p. 3. At page 14, the Committee stated:

"A committee amendment proposes as an additional exemption persons employed in connection with the ginning, compressing, and storing of cotton or with the processing of cotton seed."

The activity of "storing" was deleted on the floor so that the "and" was moved over to precede "compressing" to read as finally enacted. As such, it took the place of the former comma.

ton as compared to the compressing of cotton, or that, with full consciousness of these practicable considerations, it meant to lay down a standard which could not be met in fact.

Literalism gives way in the face of such considerations. United States v. American Trucking Associations, Inc., 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345, 1350; Fulford v. Forman, 5 Cir., 245 F.2d 145; Florida Citrus Exchange v. Folsom, 5 Cir., 246 F.2d 850; United States v. Morris, 5 Cir., 252 F.2d 643. Under Section 207(c), the ginning of cotton, the compressing of cotton, the performance of either or both is exempt from the overtime provisions of the Act.

Affirmed.