# Whether False Statements or Omissions in Iraq's Weapons of Mass Destruction Declaration Would Constitute a "Further Material Breach" Under U.N. Security Council Resolution 1441

False statements or omissions in Iraq's weapons of mass destruction declaration would by themselves constitute a "further material breach" of U.N. Security Council Resolution 1441.

December 7, 2002

MEMORANDUM OPINION FOR THE COUNSEL TO THE VICE PRESIDENT[*]

You have asked whether the Government of Iraq will have committed a "further material breach" of its international legal obligations, as that term is defined in paragraph 4 of United Nations ("U.N.") Security Council Resolution 1441 ("UNSCR 1441"), if it makes false statements or omissions in the declaration required by paragraph 3 of that resolution.[1] In paragraph 3, the Security Council required that Iraq report on all aspects of its weapons of mass destruction ("WMD") programs. Paragraph 4 finds that false statements or omissions in Iraq's paragraph 3 declaration *and* failure by Iraq to comply and cooperate with UNSCR 1441 would constitute a further material breach. We conclude that false statements or omissions by themselves represent a material breach of the Security Council resolution.

We have addressed the meaning of U.N. Security Council resolutions regarding Iraq in previous opinions. *See generally Authority of the President Under Domestic and International Law to Use Military Force Against Iraq*, 26 Op. O.L.C. 135 (2002) ("Iraq Opinion"); *Effect of a Recent United Nations Security Council Resolution on the Authority of the President Under International Law to Use Military Force Against Iraq*, 26 Op. O.L.C. 190 (2002). As the Security Council itself has recognized, Iraq is currently in material breach of pre-existing Security Council resolutions related to its development of WMD programs, its repression of its civilian population, and its threat to international peace and security in the region. S.C. Res. 1441, ¶ 1, U.N. Doc. S/RES/1441 (Nov. 8, 2002). Violation of

---

[*] For the book edition of this memorandum opinion, some of the internet citations have been updated or replaced with citations of equivalent available printed authorities.

[1] You have not asked, and we do not address, what actually constitutes "false statements or omissions" under paragraph 4. Our Office has not reviewed the Iraqi declaration, which is due on December 8, 2002. We note, however, that the U.N. Security Council itself has stated that "*[a]ny* false statement or omission in the declaration" qualifies for purposes of paragraph 4 as "a further material breach." Press Release, Security Council, Security Council Holds Iraq in 'Material Breach' of Disarmament Obligations, Offers Final Chance to Comply, Unanimously Adopting Resolution 1441, U.N. SC/7564 (Aug. 11, 2002) ("UNSCR 1441 Press Release"), *available at* www.un.org/News/Press/docs/2002/SC7564.doc.htm (last visited May 10, 2012) (emphasis added).

those resolutions authorizes the United States to use force against Iraq in order to enforce the resolutions and restore international peace and security to the region. *Iraq Opinion*, 26 Op. O.L.C. at 153-69. As we have advised, the President (who represents the United States in its foreign affairs) may make the determination whether Iraq has committed a material breach of the U.N. Security Council resolutions regarding Iraq. *Id*. at 158-61.[2]

## I.

UNSCR 1441 reaffirms that the Government of Iraq is already "in material breach of its obligations under relevant resolutions." S.C. Res. 1441, ¶ 1. It also imposes additional obligations on Iraq in order to provide it with "a final opportunity to comply with its disarmament obligations under relevant resolutions of the Council." *Id*. ¶ 2. Paragraph 3 of UNSCR 1441 requires Iraq to provide a new declaration disclosing all aspects of its WMD program within 30 days of its enactment. As the U.N. Security Council approved UNSCR 1441 on November 8, 2002, the Iraqi declaration of its WMD program is due by December 8, 2002.

Specifically, paragraph 3 requires Iraq to provide to the United Nations Monitoring, Verification and Inspection Commission, the International Atomic Energy Agency, and the Security Council a "currently accurate, full, and complete declaration of all aspects of its" WMD program. *Id*. ¶ 3. Paragraph 4 provides

> that false statements or omissions in the declarations submitted by Iraq pursuant to this resolution *and* failure by Iraq at any time to comply with, and cooperate fully in the implementation of, this resolution shall constitute a further material breach of Iraq's obligations and will be reported to the Council for assessment in accordance with paragraphs 11 and 12 below.

*Id*. ¶ 4 (emphasis added).

Because of its use of the word "and," paragraph 4 might be misconstrued by some to provide that a "further material breach" has occurred only when Iraq *both* makes false statements or omissions *and* fails to comply and cooperate with the resolution. Under such an interpretation, the word "and" conveys only a conjunctive meaning. Therefore, false statements or omissions in Iraq's paragraph 3 declaration alone would not in itself constitute a further material breach. Rather, those false statements or omissions would have to be accompanied by some other

---

[2] It is the responsibility of this Office, on behalf of the Attorney General, 28 C.F.R. § 0.25(a) & (e) (2002), to provide authoritative opinions for the President on all legal questions, including questions of international law. *See* Letter for Alberto R. Gonzales, Counsel to the President, from Jay S. Bybee, Assistant Attorney General, Office of Legal Counsel (Jan. 11, 2002).

action amounting to a failure to comply with UNSCR 1441 or cooperate fully with its implementation.

## II.

In this context, an interpretation of "and" as solely conjunctive is illogical and inconsistent with the text and purpose of UNSCR 1441. It is well established that the word "and" is capable of more than one possible construction. In some contexts, "and" conveys a conjunctive meaning, under which all enumerated conditions must be satisfied before a particular result is achieved. In other contexts, however, "and" is used disjunctively, in which case any one of among two or more conditions by itself would be sufficient to trigger a particular result. Whether the word "and" conveys a conjunctive or disjunctive meaning depends on the context. In this case, examination of the context of UNSCR 1441 demonstrates clearly that paragraph 4 uses "and" in the disjunctive sense. Making false statements or omissions in Iraq's declaration of its WMD programs, *without more*, would constitute a further material breach of Iraq's international obligations.

## A.

Under standard approaches to legal interpretation, it has been long established that the word "and" may convey a disjunctive rather than a conjunctive meaning.[3] Determining which usage was intended in a particular provision requires, as always, an examination of the context in which the term appears. As the Supreme Court has explained, in order to give effect to the intention of those who drafted a text, "courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" *United States v. Fisk*, 70 U.S. (3 Wall.) 445, 447 (1865). *See also Union Ins. Co. v. United States*, 73 U.S. (6 Wall.) 759, 764 (1867) ("when we look beyond the mere words to the obvious intent we cannot help seeing that the word 'or' must be taken conjunctively"). Such constructions are permitted to effectuate "[t]he obvious purpose" of the provision, and are appropriate when "[t]he evil intended to be remedied" is "transparent." *Fisk*, 70 U.S. at 447. While pleading for reading "and" in its common conjunctive meaning, the most recent edition of Sutherland's treatise on statutory construction recognizes that "[d]isjunctive 'or' and [c]onjunctive 'and' may be interpreted as substitutes."

---

[3] Some might object that United States cases on the disjunctive meaning of "and" are not applicable to international law. The ordinary meaning of words, purpose, and context are relevant in international legal interpretation, just as they are in American practice. As the Restatement (Third) of Foreign Relations Law explains, "an international agreement is to be interpreted in good faith in accordance with the ordinary meaning to be given to its terms in their context and in the light of its object and purpose." Restatement (Third) of Foreign Relations Law 325(1) (1987). *See also* Vienna Convention on the Law of Treaties, art. 31(1) (same). The reasoning of American courts in interpreting "and" is therefore relevant and persuasive with regard to how "and" should be read in light of its context.

1A Norman J. Singer, *Sutherland on Statutes and Statutory Construction* § 21:14, at 183-88 (6th ed. 2002).[4] Federal courts of appeals,[5] federal district courts,[6] and state courts[7] have held that the word "and" is capable of conveying a disjunctive meaning. Such constructions have been applied to wills[8] and contracts[9] as well as statutory enactments.[10]

---

[4] Courts cite Sutherland's discussion of conjunctive and disjunctive terms as authority. *See*, *e.g.*, *Bruce v. First Fed. Sav. & Loan Ass'n of Conroe*, *Inc.*, 837 F.2d 712, 715 (5th Cir. 1988); *United States v. Del Rio Springs*, *Inc.*, 392 F. Supp. 226, 227 (D. Ariz. 1975).

[5] *See*, *e.g.*, *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 893 (5th Cir. 1958) ("the word 'and' is not a word with a single meaning, for chameleonlike, it takes its color from its surroundings"); *Cal. Lumbermen's Council v. FTC*, 115 F.2d 178, 185 (9th Cir. 1940) ("when the order is read as a complete article there is no question but that the acts prohibited ['the purchase and the offering for sale'] are prohibited in the case of purchase and sale or the purchase or sale, separately or together"); *Pitcairn v. Am. Refrigerator Transit Co.*, 101 F.2d 929, 937 (8th Cir. 1939) ("'and' is sometimes read as 'or', when necessary to effectuate an apparent intent"); *Atlantic Terra Cotta Co. v. Masons' Supply Co.*, 180 F. 332, 338 (6th Cir. 1910) ("'and' is frequently read as 'or'").

[6] *See*, *e.g.*, *Matter of Velis*, 123 B.R. 497, 510 (D.N.J. 1991) ("The word 'and' is to be accorded its normal conjunctive connotation, rather than treated as a synonym for the word 'or,' unless such strict grammatical construction would frustrate clear legislative intent."), *rev'd on other grounds*, 949 F.2d 78 (3rd Cir. 1991); *United States v. Mullendore*, 30 F. Supp. 13, 15 (N.D. Okla. 1939) ("the Courts have many times held that 'and' in a statute may be read to mean 'or'").

[7] *See*, *e.g.*, *Mayer v. Cook*, 57 N.Y.S. 94, 95 (N.Y. App. Div. 1899) ("courts have construed 'and' as 'or'").

[8] *See*, *e.g.*, *Polsky v. Cont'l Nat'l Bank of Lincoln*, 110 F.2d 50, 57 (8th Cir. 1940) ("The word 'and' may sometimes be substituted for the word 'or,' and vice versa, even in the construction of a will, where that is necessary to carry out the manifest intention of the testator.").

[9] *See*, *e.g.*, *In re Knepp*, 229 B.R. 821, 847 (Bankr. N.D. Ala. 1999) ("It is a general rule of contract construction that 'and' can be read as 'or' and vice-versa under certain conditions. The words should not be treated as interchangeable when their accurate and literal reading does not render the sense dubious. . . . [T]he intent of the parties must determine whether the Court chooses to adopt this construction.") (citations and quotations omitted).

[10] Courts have given varying degrees of presumptive weight to the standard usage of "and" in its conjunctive sense. *Compare*, *e.g.*, *Bruce*, 837 F.2d at 715 ("The word 'and' is . . . to be accepted for its conjunctive connotation rather than as a word interchangeable with 'or' except where strict grammatical construction will frustrate clear legislative intent."), *Peacock*, 252 F.2d at 893 n.1 ("The words 'and' and 'or' when used in a statute are convertible, as the sense may require. A substitution of one for the other is frequently resorted to in the interpretation of statutes, when the evident intention of the lawmaker requires it."), *and Rice v. United States*, 53 F. 910, 912 (8th Cir. 1893) ("Undoubtedly 'and' is not always to be taken conjunctively. It is sometimes read as if it were 'or,' and taken disjunctively and distributively, but this is only done where that reading is necessary to give effect to the intention of the legislature, as plainly expressed in other parts of the act, or deducible therefrom."), *with Geyer v. Bookwalter*, 193 F. Supp. 57, 62 (W.D. Mo. 1961) ("In order to effectuate the intention of this testator, the word 'and' is to be construed to mean 'or'."), *and United States v. Cumbee*, 84 F. Supp. 390, 391 (D. Minn. 1949) (construing statute "in the light of the purpose and history of the provision of which it is a part and the statutes to which it applies" to "give 'and' the meaning of 'or'"); *see also* 1A C. Dallas Sands, *Sutherland on Statutes and Statutory Construction* § 21:14, at 90-91 (4th ed. 1972) ("the words are interchangeable . . . one may be substituted for the other, if to do so consistent with the legislative intent") (quoted in *Del Rio Springs*, 392 F. Supp. at 227).

**B.**

The text and purpose of UNSCR 1441 unequivocally demonstrate that giving conjunctive meaning to the word "and" in paragraph 4 would be illogical and would frustrate the clear intent of the U.N. Security Council. Indeed, in a press release announcing its unanimous approval of UNSCR 1441, the Security Council stated that "[a]ny false statement or omission in the declaration will be considered a further material breach of Iraq's obligations." UNSCR 1441 Press Release, *supra* note 1. In light of "[t]he obvious purpose" of paragraph 4, *Fisk*, 70 U.S. at 447, we would likewise read the term "and" disjunctively and conclude that Iraq will be in "further material breach of [its] obligations" if it makes "false statements or omissions in the declarations submitted . . . pursuant to [paragraph 3 of] this resolution." S.C. Res. 1441, ¶ 4.

A conjunctive approach to paragraph 4, taken to its logical conclusion, is both untenable and impossible to reconcile with either the text or purpose of the resolution. Under a conjunctive construction, the Government of Iraq would not be in "further material breach of [its] obligations" unless it *both* (1) makes "false statements or omissions in [its] declarations" and (2) "fail[s] . . . to comply with, and cooperate fully in the implementation of, this resolution." S.C. Res. 1441, ¶ 4. In other words, Iraq could avoid a finding of "further material breach" simply by making a completely truthful and accurate declaration. Iraq could willfully refuse inspections and even engage in military hostilities against U.N. inspectors and the U.S. and allied forces protecting them. Under a conjunctive reading of "and," Iraq could make a full disclosure of its existing WMD programs, and then refuse to disarm and instead re-double its illegal efforts to obtain such weapons and yet still not be in "further material breach of [its] obligations" to the Security Council. Or a material breach would not occur if Iraq fully cooperated with U.N. inspectors, but utterly failed to provide any disclosure of information related to its WMD programs.

Such a result cannot be squared with the text of UNSCR 1441. Paragraph 5 and subsequent provisions of UNSCR 1441 detail Iraq's specific obligations with respect to inspections and disarmament. Iraqi violations of these provisions, such as refusing to allow inspectors into Iraq, or harming inspectors, or concealing WMD locations and materials, would constitute a material breach of its obligations under UNSCR 1441. Yet, under the conjunctive construction, the most willful violations of its inspection obligations would not constitute a "further material breach" so long as Iraq has not made false statements or omissions in its paragraph 3 declaration. Under the conjunctive approach, once Iraq satisfied its declaration obligations under paragraph 3 and refrained from making "false statements or omissions" in that declaration, Iraq would *never* be vulnerable to a finding of "further material breach of Iraq's obligations." Such a construction of

the resolution would render most of UNSCR 1441 a nullity. Only by reading "and" in paragraph 4 as disjunctive can we give effect to all of UNSCR 1441.

Reading "and" to be conjunctive would also conflict with the very purpose of UNSCR 1441. The text of the resolution makes clear that its fundamental purpose is to disarm Iraq of WMD. Honest declarations and full and complete access for inspectors are merely a means required to meet an end. UNSCR 1441 expressly states that, although Iraq already "has been and remains in material breach of its obligations" under prior U.N. Security Council resolutions, the Council would "afford Iraq . . . a final opportunity to comply with its *disarmament obligations*." S.C. Res. 1441, ¶¶ 1-2 (emphasis added). The resolution specifically notes that the declaration requirements of paragraph 3 are not an end in themselves, but that they are imposed so that Iraq might "begin to comply with its disarmament obligations." *Id*. ¶ 3. Paragraph 3's mandate of a "currently accurate, full, and complete declaration" is the "begin[ning]," and thus the *sina qua non*, of disarmament. *Id*. ¶¶ 3-4. In light of the resolution's clear purpose to achieve the disarmament of Iraq, a construction of paragraph 4 that allows Iraq to refuse to disarm and still avoid a finding of "further material breach" would be at odds with the text and structure of UNSCR 1441.

Events surrounding the passage of UNSCR 1441 further demonstrate that the core purpose of the resolution is to secure Iraqi disarmament. On October 25, 2002, President Bush made clear that the United States would not accept any Security Council resolution that did not make disarmament its paramount objective. He stated that "any resolution that evolves must be one which does the job of holding Saddam Hussein to account. That includes a rigorous, new and vibrant inspections regime, *the purpose of which is disarmament*, *not inspections for the sake of inspections*."[11] After the Council approved UNSCR 1441, President Bush stated that, "[w]ith the resolution just passed, . . . Saddam Hussein must fully disclose *and* destroy his weapons of mass destruction. . . . *Any* act of delay or defiance will be an additional breach of Iraq's international obligations. . . . *Any* Iraqi noncompliance . . . will show that Iraq has no intention of disarming."[12] In its press release announcing its unanimous approval of UNSCR 1441, the Security Council reiterated that the resolution merely "afford[ed]" Iraq "a 'final opportunity to comply' with its disarmament obligations." UNSCR 1441 Press Release, *supra* note 1. That announcement also quotes U.N. Secretary-General Kofi Annan, who applauded the resolution and said that "[t]he goal is to ensure the peaceful disarmament of Iraq in compliance with Council resolutions and a better, more secure future for its people." *Id*. John Negroponte, the United States ambassador to

---

[11] The President's News Conference with President Jiang Zemin of China in Crawford, Texas, 2 *Pub*. *Papers of Pres*. *George W*. *Bush* 1897, 1900 (Oct. 25, 2002) (emphasis added).

[12] Remarks on the Passage of a United Nations Security Council Resolution on Iraq, 2 *Pub*. *Papers of Pres*. *George W*. *Bush* 2053, 2053 (Nov. 8, 2002) (emphasis added).

the United Nations, said that "the resolution constituted the world community's demand that Iraq disclose and destroy its weapons of mass destruction. The new course in that effort would send a clear message to Iraq insisting it *disarm or face the consequences*." *Id*. (emphasis added). These remarks demonstrate that Iraq's fundamental obligation is disarmament, and that honest declarations by themselves cannot immunize Iraq from a finding that it has committed a "further material breach of [its] obligations."

Representatives from the other member nations of the Security Council have made similar statements. For example, United Kingdom representative Jeremy Greenstock said that "[t]he resolution made crystal clear that Iraq was being given a final opportunity to comply with its disarmament obligations. The regime in Baghdad now faced an unequivocal choice: between complete disarmament and the serious consequences indicated in paragraph 13 of the resolution." *Id*. The Mexican delegate, Adolpho Aguilar Zinser, maintained that, "[i]n case of failure to comply, the Council would act"—apparently without regard to whether Iraq had given an accurate declaration free of any false statements or omissions. *Id*. Richard Ryan of Ireland explained that "[t]he resolution was about disarming Iraq," and that "[t]he Council had given Iraq an opportunity to comply with its disarmament obligations." *Id*. Bulgaria's Stefan Tafrov similarly noted that the resolution's "objective" was "the disarmament of Iraq." *Id*. Ole Peter Kolby of Norway acknowledged "the overall objective of disarming Iraq of weapons of mass destruction" and that "the Council had afforded Iraq with a final opportunity to comply with its disarmament obligations." *Id*. The President of the Council, Zhang Yishan of China, stated that "[t]he purpose" of the resolution "was to disarm Iraq." *Id*. Even the Russian delegate, Sergey Lavrov, who contended that "it would not be seen as a violation if" Iraq took "more than 30 days" to issue its paragraph 3 declaration, nevertheless "emphasized the need for Iraq to comply with *all* its disarmaments obligations on the basis of today's resolution." *Id*. (emphasis added).

We have found no evidence, moreover, to suggest that any member nation of the Security Council believed that noncompliance with inspections or Iraqi refusal to disarm would not constitute a "further material breach" under UNSCR 1441, so long as Iraq provided a complete and accurate disclosure of its WMD program. In light of the apparent consensus that Iraq's fundamental obligation was disarmament, it is unsurprising that no pre-enactment history adopts a conjunctive approach to paragraph 4 or asserts that honest declarations by themselves could prevent a finding of "further material breach of Iraq's obligations."

## III.

In conclusion, should Iraq make false statements or omissions in its paragraph 3 declaration, Iraq would necessarily be in "further material breach of [its] obliga-

tions." False statements or omissions alone are enough to constitute "further material breach" as that term is defined in paragraph 4. An additional showing of noncompliance and noncooperation with the resolution is not required, because the word "and" in paragraph 4 has a disjunctive, rather than a conjunctive, meaning.

JOHN C. YOO
*Deputy Assistant Attorney General*
*Office of Legal Counsel*