IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 24, 2011 Session

## JUDY DAVIS, as Next Friend of ELOISE GWINN, an incapacitated person
v.
## KINDRED HEALTHCARE OPERATING, INC., ET AL.

### Direct Appeal from the Circuit Court for Shelby County
No.  CT-0004413-07     Jerry Stokes, Judge

### No. W2010-01575-COA-R3-CV - Filed April 19, 2011

This is a nursing home abuse case.  The trial court denied Appellant nursing home's motion to compel arbitration based upon an alternative dispute resolution agreement that was executed by Appellee, the niece of the patient being admitted to Appellants' nursing facility. The patient had executed a power of attorney in favor of her niece and her niece's husband, but only the niece had signed the admission papers on behalf of the patient.  The trial court determined that the power of attorney created a joint agency, whereby the signatures of both the niece and her husband were required in order to bind the patient, as principal, to arbitration.  Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

F. Laurens Brock, Donna L. Boyce, and J. Bennett Fox, Jr., Nashville, Tennessee, for the appellants, Kindred Healthcare Operating, Inc.; Kindred Healthcare, Inc.; Kindred Nursing Centers East, LLC; Kindred Hospitals Limited Partnership; Kindred Nursing Centers Limited Partnership d/b/a Cordova Rehabilitation and Nursing Center; James W. Freeman, in his capacity as Administrator of Cordova Rehabilitation and Nursing Center; Renee Tutor, in her capacity as Administrator of Cordova Rehabilitation and Nursing Center; Harland Bicking in his capacity as Administrator of Cordova Rehabilitation and Nursing Center; and John E. Palmer; in his capacity as Administrator of Cordova Rehabilitation and Nursing Center.

Cameron C. Jehl, Deborah Truby Riordan, and Carey L. Acerra, Little Rock, Arkansas, for the appellee, Judy Davis, as Next Friend of Eloise Gwinn, an incapacitated person.

# OPINION

On January 14, 2003, Eloise Gwinn, accompanied by her niece Judy Davis and Mrs. Davis' husband, Thomas Davis (together with Mrs. Davis, "Plaintiffs," or "Appellees"), went to her attorney's office in Brownsville, Tennessee, where Ms. Gwinn executed the power of attorney that is at issue in this appeal. The Power of Attorney provides, in pertinent part, as follows:

> Be it known that I, ELOISE H. GWINN, have made, constituted, and appointed THOMAS L. DAVIS and JUDY L. DAVIS my true and lawful attorneys for me and in my name, place, and stead....

On October 14, 2004, Mrs. Davis signed documents, on Ms. Gwinn's behalf, in conjunction with Ms. Gwinn's admission to Cordova Rehabilitation and Nursing Center ("Cordova"). Cordova is owned, operated, and managed by Kindred Healthcare Operating, Inc., Kindred Healthcare, Inc., Kindred Nursing Centers East, L.L.C., Kindred Hospitals Limited Partnership, and Kindred Nursing Centers Limited Partnership d/b/a Cordova Rehabilitation and Nursing Center (together, "Kindred"). The paperwork that was signed by Mrs. Davis, on Ms. Gwinn's behalf, contained the Alternative Dispute Resolution Agreement (the "ADR Agreement"), which Appellants seek to enforce in this lawsuit. According to its terms, the ADR Agreement covers any disputes, "whether for statutory, compensatory, or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties...including ...negligence...[and]...medical malpractice." Moreover, the ADR Agreement provides for both mediation and binding arbitration. Specifically, the ADR Agreement states that, '[i]f the parties are unable to reach settlement informally, or through mediation, the dispute shall proceed to binding arbitration." By agreeing to submit to binding arbitration, the ADR Agreement further stipulates that the parties waive their respective right to a trial.

On August 28, 2007, Mr. and Mrs. Davis, as Next Friend of Eloise Gwinn, filed a complaint against Kindred, Cordova, Renee Tutor, in her capacity as Administrator of Cordova, Harland Bicking, in his capacity as Administrator of Cordova, and John E. Palmer, in his capacity as Administrator of Cordova (together with Kindred, Cordova, Ms. Tutor, and Mr. Bicking, "Defendants," or "Appellants"), alleging negligence in the care and treatment of Ms. Gwinn. According to the complaint, Ms. Gwinn sustained multiple injuries while in Appellants' care, including, but not limited to, falls, urinary tract infections, Coumadin toxicity, dehydration, malnutrition, and poor hygiene. In response to the Complaint, Appellants filed motions to compel arbitration pursuant to the Uniform Arbitration Act, Tennessee Code Annotated Sections 29-5-301, *et seq*. Although the Appellants filed separate

motions to compel arbitration, all sought the same result-- to enforce the terms of the ADR Agreement that was signed by Mrs. Davis on Ms. Gwinn's behalf. On July 25, 2008, Appellees filed a consolidated response to all of Appellants' motions to compel arbitration, asserting, *inter alia*, that the arbitration agreement was invalid pursuant to the contract defenses of unconscionability and lack of authority.

Thereafter, the parties engaged in discovery on the issue of arbitration, which discovery included the taking of Mrs. Davis' deposition. Following discovery, on February 11, 2010, Appellees filed a supplemental response to the Appellants' motions. In the supplemental response, Appellees asserted that the joint nature of the power of attorney prevented the ADR Agreement, which was signed only by Mrs. Davis, from being enforceable. Appellees further asserted that the agreement was unconscionable, was not the subject of a knowing and voluntary waiver, and that it was signed under duress.

A hearing was held on June 4, 2010. By agreement of the parties, the hearing proceeded on oral arguments and the deposition testimony of Mrs. Davis. At the end of the hearing, the trial court made the following relevant statement from the bench:

> But the power of attorney versus both signatures versus one signature is really what has the Court's concern. You have a document that clearly identifies, and is unambiguous in terms of the extent and scope of the power of attorney; and it says both "Judy and Thomas Davis" notwithstanding what they've done in the past or subsequent to the admission to this facility. We have a document that spells out the authority granted by the principal.... [T]he Court...is not going to grant the motion to compel arbitration.... Only one name signed Ms. Gwinn in and that was Judy Davis, and clearly, [the power of attorney] says Mr. Davis as well....

The foregoing statements were incorporated, by reference, into the trial court's final judgment on Appellants' motion(s) to compel arbitration, which was filed on June 18, 2010. By its order, the trial court found, in relevant part, that "the power of attorney executed by Ms. Gwinn appointed 'Thomas L. Davis and Judy L. Davis' as Ms. Gwinn's joint agents. The Power of Attorney is unambiguous in its terms." Because only Mrs. Davis signed the admission documents, the trial court concluded that the ADR Agreement at issue "is invalid and not binding on Ms. Gwinn."

Appellants appeal under Tennessee Code Annotated Section 29-5-319, which provides that "an appeal may be taken from... [a]n order denying an application to compel arbitration

-3-

made under § 29-5-303." The sole issue before this Court is whether the trial court erred in finding that Ms. Gwinn's power of attorney appointed Mr. Davis and Mrs. Davis as her joint as opposed to several attorneys, thus requiring both of their signatures to validate the ADR Agreement.

It is well settled that "powers of attorney are to be construed in accordance with the rules for the interpretation of written instruments generally; in accordance with the principles governing the law of agency, and, in the absence of proof to the contrary, in accordance with the prevailing laws relating to the act authorized." *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 884 (Tenn. 2007) (quoting 3 Am. Jur. 2d Agency, § 27 (2007)) (emphasis omitted). The interpretation of a written instrument is a matter of law; therefore, our review is "*de novo* on the record with no presumption of correctness in the trial court's conclusions of law." *Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App.1993)).

In *Tennessee Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743 (Tenn. 2007), the Tennessee Supreme Court provided a thorough explanation of principles relevant to powers of attorney:

> The execution of a power of attorney creates a principal-agent relationship. Unless otherwise constrained by law or public policy, a person executing a power of attorney may empower his or her agent to do the same acts, to make the same contracts, and to achieve the same legal consequences as the principal would be personally empowered to do.
>
> The authority of the agent may be couched in general terms and may be as broad as the principal decides to make it. In the absence of specific legal requirements, a power of attorney may be in any form and may be executed in accordance with any recognized common-law method for executing written instruments. The language of a power of attorney determines the extent of the authority conveyed. The more specific a power of attorney is concerning the performance of particular acts, the more the agent is restricted from performing acts beyond the specific authority granted.
>
> A power of attorney is a written instrument that evidences to third parties the purpose of the agency and the extent of the agent's powers. It should be construed using the same rules of construction generally applicable to contracts and other written instruments, except to the extent that the fiduciary

relationship between the principal and the agent requires otherwise.

The legal effect of a written contract or other written instruments is a question of law. Thus, powers of attorney should be interpreted according to their plain terms. There is no room for the construction of a power of attorney that is not ambiguous or uncertain, and whose meaning and portent are perfectly clear. However, when the meaning of a power of attorney is unclear or ambiguous, the intention of the principal, at the time of the execution of the power of attorney, should be given effect. While the parol evidence rule applies, the courts may arrive at the meaning of a power of attorney by considering the five factors identified in Restatement (Second) of Agency section 34.[1]

A formal written instrument that has been carefully drawn can be assumed to spell out the intent of the author with a high degree of particularity. Thus, an instrument like a power of attorney should be subjected to careful scrutiny in order to carry out the intent of the author and no more. There should be neither a "strict" nor a "liberal" interpretation of the instrument, but rather a fair construction that carries out the author's intent as expressed in the instrument.

***Tennessee Farmers Life Reassurance Co. v. Rose***, 239 S.W.3d at 749-50 (citations and original footnotes omitted).

In the instant appeal, the parties argue two interpretations of the conjunction "and"

---

[1] The five factors listed in Restatement (Second) of Agency section 34 include:
> (a) the situation of the parties, their relations to one another, and the business in which they are engaged;
> (b) the general usages of business, the usages of trades or employments of the kind to which the authorization relates, and the business methods of the principal;
> (c) facts of which the agent has notice respecting the objects which the principal desires to accomplish;
> (d) the nature of the subject matter, the circumstances under which the act is to be performed and the legality or illegality of the act; and
> (e) the formality or informality, and the care, or lack of it, with which an instrument evidencing the authority is drawn.

as used in the power of attorney, i.e., "THOMAS L. DAVIS **and** JUDY L. DAVIS." Appellants contend that the use of "and" creates a several attorney-in-fact relationship, whereby either Mr. Davis or Mrs. Davis, acting alone, may bind their principal, Ms. Gwinn. Appellees argue, and the trial court found, that the use of "and,"creates a joint attorney-in-fact relationship, whereby Ms. Gwinn may be bound only by the signature of both Mr. Davis and Mrs. Davis. The parties' dispute highlights a recurring problem, i.e., "every use of 'and' or 'or' as a conjunction involves some risk of ambiguity." Maurice B. Kirk, *Legal Drafting: The Ambiguity of "And" and "Or*," 2 Tex. Tech. L. Rev. 235, 253 (1971). While Tennessee jurisprudence on the use of "and" and "or" in written instruments is somewhat limited, we find guidance in the caselaw of our federal courts.

In *Noell v. Am. Design, Inc.*, 764 F.2d 827 (11th Cir.1985), the court noted that "[i]t is an established princip[le] that 'the word "or" is frequently construed to mean "and," and vice versa, in order to carry out the evident intent of the parties.'" *Id*. at 833 (quoting *Dumont v. United States*, 98 U.S. 142, 143, 25 L. Ed. 65 (1878)). In other words, "there is more to 'and' than meets the eye." *OfficeMax, Inc. v. United States*, 428 F.3d 583, 588 (6th Cir. 2005). However, not all courts have agreed. In *MacDonald v. Pan Am. World Airways, Inc.*, 859 F.2d 742 (9th Cir. 1988), Judge Kozinski, in his dissent from the majority opinion, stated, in relevant part, that:

> As a linguistic matter, "and" and "or" are not synonyms; indeed, they are more nearly antonyms. One need only start the day with a breakfast of ham or eggs to be duly impressed by the difference. While "and" and "or" are both small words, and are occasionally seen joined with a slash, when they stand alone, they have substantially different meanings with dramatically different effects. We give our language, and our language-dependent legal system, a body blow when we hold that it is reasonable to read "or" for "and."

*MacDonald*, 859 F.2d at 746.

The problem with "and" is that "chameleonlike, it takes its color from its surroundings." *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 893 (5th Cir. 1958). Specifically, it can be used either "jointly" ( e.g., "[both] A and B") or "severally" ( e.g., "A and B [meaning A or B, or both]").[2] Kirk, *supra*, at 238 (citing Reed Dickerson, The

---

[2] The corresponding difficulty with "or" is that it can be used in both an "inclusive" sense ("A or B [or both]") and an "exclusive" sense ("A or B [but not both]"). Kirk, *supra,* at 237-38. Compare the phrase,

(continued...)

<u>Fundamentals of Legal Drafting</u> 77 (1965)). For example, when a person speaks broadly of "charitable and educational institutions," does she use "and" jointly, i.e., conjunctively, to refer to individual institutions that are both charitable and educational, or severally, i.e., disjunctively, to refer to all institutions that are either charitable or educational, but may also be both? *See id*. at 238-40. That people sometimes use "and" to connect mutually exclusive concepts, as in the phrase, "medical and burial expenses," *cf. id*. at 238, only increases the potential for confusion. However, the distinction between the conjunctive and disjunctive use of the word "and," may be unnecessary. In the *OfficeMax* case, Judge Rogers, in his dissent, stated that, "[i]n each sentence the word 'and' has the same conjunctive meaning-the difference lies in whether the preceding words are distributed over the conjoined elements or not." *OfficeMax*, 428 F.3d at 600 (Rogers, J., dissenting). If "and" always serves some conjunctive function, then the question, in a particular context, is what other words the "and" is connecting, and how. Consequently, the potential for confusion does not mean that every occurrence of the word "and" is ambiguous. On the contrary, the context in which the word appears often resolves any superficial uncertainty. In the phrase, "medical and burial expenses," for example, "and" may be used severally in the sense that no single expense can be both "medical" and "burial"; interpreting "and" jointly would make no sense in this context. However, we note that the phrase can also be used jointly–e.g., you are responsible for paying medical and burial expenses. Accordingly, context is everything.

We adopt the general rule that "unless the context dictates otherwise, the word 'and' is presumed to be used in its ordinary sense, that is, [jointly]." *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005) (citing *Crooks v. Harrelson*, 282 U.S. 55, 58, 51 S. Ct. 49, 75 L .Ed. 156 (1930)). Thus, in cases where courts have read "and" severally, the context fairly could be said to have compelled that result. For instance, in *Noell*, the court considered two retirement plans under which an employee forfeited his accrued benefits "if he compete[d] with the Employer ...; if he [was] determined ... to have been guilty of committing theft, fraud or embezzlement ...; **and** if he [was] determined ... to have disclosed or released to third parties the Employer's trade secrets." 764 F.2d at 829 (emphasis added). After considering the circumstances and the plan summaries provided to the employees, the *Noell* Court held that the word "and" had to be read severally to effect the parties' intent:

---

[2](...continued)
"if you are a husband or a father, you'll understand," with, "you may eat an apple or an orange." In the first example, the or is probably inclusive (people who are both husbands and fathers will probably understand, too), but in the second, it is probably exclusive (you are probably not allowed to eat both fruits). Note that the inclusive sense of "or" overlaps with the several sense of "and."

> For the forfeiture clause to have meaning [if "and" were read
> jointly], an employee would first have to be guilty of theft, fraud
> or embezzlement, he would then have to disclose or release to
> third parties the employer's trade secrets, and then he would
> have to go to work for a competitor. It would be unreasonable
> to conclude that an employer, who has provided its employees
> with benefits in excess of those required by law, would place
> such an onerous burden on itself with respect to the termination
> of the benefits.

*Id*. at 833. Similarly, in ***Peacock v. Lubbock Compress Co.***, 252 F.2d at 893, the court held that a several reading of the word "and" in the statutory phrase, "the ginning and compressing of cotton," was the only one that made any sense: "[I]t is an acknowledged undisputed fact of the cotton industry that compressing is an operation entirely removed from ginning and that the two are never carried on together. To read [the phrase] literally [ i.e., jointly] here is to read it out of the statute." *Id*.

However, in ***American Bankers Insurance Group v. U.S.***, 408 F.3d 1328 (11th Cir. 2005), the appellate court reached the opposite conclusion. In ***American Bankers***, the court interpreted a statute that defined toll telephone service as a service for which the charge "varie[d] in amount with the distance and elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1). Without evidence supporting a several reading, the court read the "and" jointly: "[T]he provision requires that to come within the definition of 'toll telephone service' the rate must vary by both 'distance and elapsed transmission time.'" 408 F.3d at 1334; *accord **OfficeMax***, 428 F.3d 583.

In ***Taylor v. Taylor***, No. M2007-00565-COA-R3-CV, 2008 WL 1850807 (Tenn. Ct. App. April 24, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008), a case that is similar to the instant appeal, this Court noted that, "[t]he authority conferred upon two or more agents is generally presumed to be joint, unless it is demonstrated that less than the entire number have the authority to act." *Id*. at *4 (citing 24 C.J.S. Agency § 224 (2008)). In ***Taylor***, we concluded that the power of attorney "used the conjunctive 'and' rather than 'or' when appointing the Defendants and there is no language in the instrument permitting them to act severally." *Id*.; *see also **Levering & Carncross v. The Mayor et al.***, 26 Tenn. 553, 1847 WL 5207 (Tenn. 1847) (acknowledging authority that provides that, "[w]here there are joint agents, all must join, or the principal is not bound"). Likewise, in cases from our sister states, courts have consistently held that, where there is no intent that agents may act severally, their authority is joint and actions taken by the agents will be invalid unless executed by all agents. ***Musquiz v. Marroquin***, 124 S.W.3d 906, 911-12 (Tex. Ct. App. 2004) (holding that the plain, unambiguous language in mother's power of attorney provided

for the appointment of two attorneys-in-fact, her daughter and her son, without establishing a joint and several agency, and thus, power of attorney was presumed to be a joint agency); *Cedar Rapids & St. Paul R.R. v. Stewart*, 25 Iowa 115, 1868 WL 238 (Iowa 1868) ("An authority conferred upon two or more persons to do an act as agents of another must be performed by them jointly when no contrary intent appears, yet, if it be shown by the instrument conferring the authority that it was the intent that a part of the agents might execute the power, such execution will be sufficient."); *Copeland v. Mercantile Ins. Co.*, 6 Pick. (Mass.) 198, 202-203, 1828 WL 1706 (Mass. 1828) (holding that "letter of instructions" created "a joint authority," which neither agent could separately execute); *Keough v. Kittleman*, 447 P.2d 77, 78-79 (Wash. 1968) ("It is a well-settled rule of agency law that when an agency is given to more than one person, it is presumed that the principal intended the agency to be joint and to be exercisable only by the unanimous action of the agents."). Likewise, in *First National Bank of Beaver v. Hough*, 643 F.2d 705, 707 (10th Cir. 1981), the Court held that, "when an agency is given to more than one person, it is presumed that the principal intended the agency to be joint and to be exercisable only by the unanimous action of the agents."). These holding are consistent with the presumption of joint agency found in the Restatement (Second) of Agency § 41 (1958):

> (2) Unless otherwise agreed, authority given in one authorization to two or more persons to act as agents includes only authority to act jointly, except in the execution of a properly delegable authority.

By way of explanation, the comments to this section are also instructive:

> Ordinarily, where one authorizes two or more persons to act for him, he expects that they will act as a group in the exercise of judgment. To the extent that an agent can properly delegate performance to another, however, as in the doing of ministerial acts or in the performance of acts requiring professional assistance, the group can delegate performance either to a member of the group or to others. Thus, the group can in a proper case, appoint an attorney at law to conduct legal proceedings. The appointment of a business organization as agent ordinarily indicates that any of the members of the organization regularly conducting matters similar to those entrusted to it are authorized to perform the business.

Restatement (Second) of Agency §41, cmt. a. Likewise, the following illustration is helpful:

> P executes a power of attorney designating A and B as agents for the sale of Blackacre. Neither A nor B is authorized separately to arrange the terms of sale; these having been concluded, however, either can properly designate the other to conduct the formalities of sale or to accept delivery of a draft payable to the principal or, in a proper case, payable to them jointly.

Restatement (Second) of Agency §41, ill. 3

Our decision in *Taylor*, 2008 WL 1850807, involved an action to set aside a quitclaim deed that had been executed by one of two attorneys-in-fact. As in the instant case, the power of attorney in *Taylor* used the conjunctive "and," rather than "or," to appoint the agents. *Id*. Moreover, there was "no language in the instrument permitting them to act severally." *Id*. Although the trial court held that the deed was void on other grounds, the court did find that the signature of Joyce Hoyt, one of the two designated agents, was sufficient to transfer their mother's interest in the property to Jack Taylor, the other agent. Here, the instant appeal differs from *Taylor*. The trial court's finding, in *Taylor*, that one agent's signature was sufficient to bind the principal was based upon the fact that, in *Taylor*, there was proof of ratification of the act by the non-signing agent. On appeal, this Court disagreed with the trial court's finding that Joyce Hoyt's signature, alone, was sufficient under the power of attorney. *Id*. at *4. Specifically, we stated that "the person who performed the act being ratified–here, Ms. Hoyt–must be acting as the agent of the person who ratifies the act." Accordingly, there could be no ratification by the second agent because the first agent originally signed the deed as the agent of the principal, not as the agent of the second agent. At no point did Ms. Hoyt represent that she was acting as the agent for Mr. Taylor in executing the quitclaim deed; when she executed the deed, she did so on behalf of Ms. Taylor. *Id*. Consequently, we concluded that, under the terms of the *Taylor* power of attorney, Ms. Hoyt, one of two designated attorneys-in-fact could not, alone, convey her mother's property." *Id*.

Based upon the foregoing authority, we conclude that the word "and" is conjunctive in nature. Therefore, we hold that, unless there is language in the instrument authorizing the agents to act severally, "and" should be given its ordinary meaning and should, therefore, be interpreted to create a joint agency relationship. Because a joint agency relationship requires the signature of all named agents in order to bind the principal, an instrument signed by less than all of the joint agents does not bind the principal unless the action of less than all joint

agents is otherwise ratified.[3]  *See Taylor v. Taylor*, 2008 WL 1850807, at *4.

In the instant case, the trial court specifically found that the power of attorney is clear and unambiguous.  It is well settled that the language used in a contract must be taken and understood in its plain, ordinary, and popular sense. ***Bob Pearsall Motors, Inc. v. Regal–Chrysler Plymouth, Inc.***, 521 S.W.2d 578 (Tenn. 1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. ***Ballard v. N. Am. Life & Cas. Co.***, 667 S.W.2d 79 (Tenn. Ct. App. 1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. ***Sutton v. First Nat. Bank of Crossville***, 620 S.W.2d 526 (Tenn. Ct. App. 1981). In determining whether an ambiguity exists in a contract, we are guided by the following principles:

> Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract. However, an ambiguity arises in a contract only when contractual terms are susceptible to fair and honest differences, and when both of the interpretations advanced are reasonable.
>
> A word or expression in the contract may, standing alone, be capable of two meanings and yet the contract may be unambiguous. Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.

77 C.J.S. Contracts § 304 (citations omitted). However, a contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, ***Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.***, 884 S.W.2d 458,

---

[3] There is no indication in this record that Mrs. Davis was acting as Mr. Davis' agent in signing the ADR Agreement, Rather, she was acting as Ms. Gwinn's agent.  Because ratification is not an issue in this appeal, we will not tax the length of this opinion with a discussion on the law regarding ratification.  Suffice to say, where a party relies upon grounds of ratification to bind a principal where only one agent, in a joint agency relationship, has acted on behalf of the principal, the requirements for ratification must be met.  *See Taylor v. Taylor*, 2008 WL 1850807 at *4.

462 (citing ***Oman Constr. Co. v. Tennessee Valley Authority***, 486 F. Supp. 375, 382 (M.D.Tenn. 1979)), nor can this Court create an ambiguity where none exists in the contract. ***Cookeville P.C.***, 884 S.W.2d at 462 (citing ***Edwards v. Travelers Indem. Co.***, 201 Tenn. 435, 300 S.W.2d 615, 617–18 (1957)).

We have reviewed the entirety of the power of attorney executed by Ms. Gwinn in the instant case. From our reading, we agree with the trial court that the instrument is unambiguous, and that the use of "and" creates a joint agency, which required the signatures of both Mr. Davis and Mrs. Davis on the ADR Agreement in order to bind Ms. Gwinn.

Appellants argue that the trial court erred in applying the clear and convincing standard in finding that there was insufficient proof that Ms. Gwinn intended for her jointly-designated agents to be able to act independently pursuant to the power of attorney. Specifically, Appellants cite the deposition testimony that was given by Mrs. Davis and argue that, had the trial court applied the correct standard–preponderance of the evidence, Mrs. Davis' testimony would be sufficient to show Ms. Gwinn's intent to have either Mr. Davis **or** Mrs. Davis bind her to the ADR Agreement as her attorney-in fact. Because the trial court correctly determined that the language used in the power of attorney was, on its face, clear and unambiguous, it is presumed that the document, itself, represents the principal's intent. ***Tennessee Farmers Life Reassurance Co. v. Rose***, 239 S.W.3d 743, 749-50. Therefore, Mrs. Davis' testimony regarding Ms. Gwinn's intent is neither persuasive, nor relevant in this case. However, even if we were to assume *arguendo* that there is some ambiguity in the power of attorney, which would require parole evidence from Mrs. Davis, it is a well-established principle that agency "may not be proven solely by the statements of the agent." *See* ***John J. Heirigs Const. Co. v. Exide***, 709 S.W.2d 604 (Tenn. Ct. App. 1986); ***Action Ads, Inc. v. Wm. B. Tanner Co.***, 592 S.W.2d 572 (Tenn. Ct. App. 1979).

For the foregoing reasons, we affirm the order of the trial court denying Appellants' motion to compel arbitration. We remand for such further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed against the Appellants, Kindred Healthcare Operating, Inc.; Kindred Healthcare, Inc.; Kindred Nursing Centers East, L.L.C.; Kindred Hospitals Limited Partnership; Kindred Nursing Centers Limited Partnership d/b/a Cordova Rehabilitation and Nursing Center; James Freeman; Renee Tutor; Harland Bicking; John E. Palmer; and their surety.

_____
J. STEVEN STAFFORD, JUDGE